AUGUSTUS M. FOUTE v. Z. C. FAIRMAN et al.

1. JUDGMENT LIENS.—A judgment lien does not confer a property or right in the land upon which it operates, but is merely a right to satisfaction of the judgment to which it relates, superior, and in preference to any adverse interest subsequently acquired.

2. SAME.—A judgment lien is limited to the interest of the debtor in the property, is subject to all equities existing at the time in favor of third parties, and can, of course, attach to no higher interest in the property than the debtor himself had when the lien arose.

3. EVIDENCE—CONTRACTS—DEEDS.—Extrinsic facts may be proved by parol to aid a defective description of lands contained in a deed, though parol evidence is inadmissible to vary or contradict what is written..

4. CASE AT BAR.—A deed of mortgage contained full description of the lands conveyed, except that it omits to mention the township and range. The same land was afterwards levied upon and sold in satisfaction of a subsequently rendered judgment against the mortgagor. The purchaser at execution sale had notice. Proof of the identity of the land held admissible, and the land subjected to the mortgage notwithstanding the sale.

APPEAL from the chancery court of Copiah county. PEYTON, Chancellor.

The opinion of the court contains a sufficient statement of the case.

*H. B. Mayes,* for appellant.

The question of the validity of the mortgage was once settled for the appellant by demurrer to his bill, on overruling which, the defendants, by answer, raise the following, among other objections, to a decree of foreclosure :

1. That the contract of Zera C. Fairman, on the 26th of August, 1862, to deliver to Foute on thirty days' notice, 18,205 lbs. ginned cotton was void, because made in consideration of a payment to Fairman of $1,820.50, Confederate money.

2. That the mortgage of the realty is void as to judgment creditors without notice of the land intended to be described therein, because of the township and range being omitted in the mortgage; there are many parcels of land in said county of Copiah which answer to the parcels described in said mortgage, as to sections and subdivisions of sections. Wherefore, said mortgage is void for uncertainty.

3. That Adams being a judgment creditor of Z. C. Fairman, without notice of the intention of the parties to said mortgage to include the said lands in said mortgage, acquired a judgment lien superior to said mortgage lien, and that L. Q. Fairman obtained title by the sale of the sheriff under said judgment, discharged of said mortgage lien.

To the first objection it may be replied, that the contract of the 26th of August, 1862, whether it be regarded as executed or executory, is in either case a valid contract, as has been held by this court in the following cases: Beauchamp v. Comfort, 42 Miss. 94; Murrel v. Jones, 40 ib. 567; Green v. Sizer, 40 ib. 530; Frazier v. Robinson, 42 ib. 131.

The second and third objections may be considered together. 1st. On what interest in the property mortgaged the 18th of September, 1865, did the judgment lien of Adams obtained 23d of October, 1868, attach? "The judgment creditor takes, in execution under his judgment, all that belongs to his debtor, and nothing more." "He takes the property of his debtor subject to every liability under which the debtor himself held it, subject to all the equities which existed at the time." Walton v. Hargroves, 42 Miss. 26. Lycurgus Q. Fairman, then, obtained by his purchase at sheriff's sale the interest of the judgment debtor, and nothing more; and, 2d. The character and extent of that interest depends upon the validity or invalidity of the mortgage by Z. C. Fairman to Foute, of the realty, which the defendants affirm is void for uncertainty.

It is very questionable whether this mortgage can, in the technical sense of the term, be regarded as uncertain or ambiguous. It begins thus: "State of Mississippi, Copiah county." The land is then described as situate in the county aforesaid, and is designated by its sections, giving, by legal sub-divisions, the parts of said sections conveyed.

The objection taken to the mortgage is, that the township and range are omitted; that in each township in said county there is a tract of land which follows and fills exactly the description given in the mortgage, and, it is said, it cannot be known which tract the grantor intended to convey.

By this omission, the land intended may be less

readily identified; but if, at the date of the conveyance, the grantor owned but one tract of this description, it can create no ambiguity, technically speaking; for it will be intended he conveyed what was his, and to this will the mortgage be applied. McChesney's Lessee v. Wainright, 5 Ohio, 453.

" So, if lands are described by the numbers or name of the lot or parcel, and also by metes and bounds, and the grantor owns lands answering to the one description and not to the other, the description of the lands which he owned will be taken to be true one, and the other rejected as *falsa demonstratio*." 1 Greenl. Ev., § 301.

If Z. C. Fairman, at the date of said mortgage, owned none of said like tracts, the mortgage would fail, not for uncertainty, but for want of title in him. If he owned but one of them, there is no ambiguity. If he owned two or more of them, this would raise an ambiguity. Neither of the defendants have pretended this was so; and if it were, the ambiguity thus appearing would be but a latent ambiguity, which is fully explained by the answers of Z. C. and L. Q. Fairman themselves, and by the witnesses, Blue and H. C. Fairman. 1 Greenl. Ev., § 297; 1 Phil. Ev. (C. & H.), ch. 10, pp. 531, 532; 2 ib. (C. H. & E., 4th Am. ed.) 745, 746, 747, 750.

In Hanna v. Renfro, 32 Miss. 128, it is held that the omission to state in a deed, in describing the land conveyed, the " county and state " in which it lay, is but a latent ambiguity, which is susceptible of explanation. 32 Miss. 128.

Ambiguities, latent and patent, are discussed by Greenleaf in vol. 1, ch. 15, which treats " of the admissibility of parol or verbal evidence to affect that which .is written." In section 297 he approaches the subject of ambiguities thus:

" Having thus explained the nature of the rule under consideration, and shown that it only excludes evi-

dence of the language of the party, and not of the circumstances in which he was placed, or of collateral facts, it may be proper to consider the case of ambiguities, both latent and patent."

"*Ambiguitas patens* is never holpen by averment; but if it be *ambiguitas latens,* then it is otherwise." Ib. § 297.

"The patent ambiguity of which Lord Bacon speaks must be understood to be that which remains uncertain to the court, after all the evidence of surrounding circumstances and collateral facts which is admissible under the rules already stated is exhausted." 1 Greenl. Ev. § 300; 2 Phil. Ev. ( C. H. & E., 4th ed.), text, pp. 750, 751–159.

"The rules of Lord Bacon rest entirely upon the principle that the law will not make, nor permit to be made, for the parties, a contract other than that which they have made for themselves. They can have no other basis than this, and so far as they carry this principle into effect they are good rules, and no further." 2 Parsons on Cont. (5th ed.), top page 560.

"Now, where does the law stop in this endeavor to remove uncertainty? We answer, not until it is found that the contract must be set aside and another one substituted before certainty can be attained." 2 Parsons on Cont., part 2, ch. 1, top page 561.

The fact, that there are several tracts of land in Copiah county which fill the description given in the mortgage, does not make it invalid if the tract intended is capable of being distinguished from the others by the circumstance or collateral fact of ownership by Z. C. Fairman, at the date of the mortgage, for "whenever a description or designation of the person or thing intended is applicable indifferently to more than one subject, extrinsic evidence is admissible to prove which of said subjects was intended. 3 Phil. Ev. (C. & H. notes), part 2, p. 1362, note 939; 2 ib. (C. H. & E.

4th Am. ed.), p. 747, note 1; Hazlip v. Noland, 6 S. & M. 301; Peacher v. Strauss et al., 47 Miss. ·

" No inconvenience, adds Lord Coke, can arise if an averment be taken in such a case, for he who sees the will by which the land is devised, cannot be deceived by any secret averment.  When he sees the devise to the testator's son, John, generally, he ought at his peril to inquire which son the testator intended, which may be easily known by him who wrote the will, and by others who were privy to the intent, and if no direct proof can be made of the intent, there the devise is void for its uncertainty.  1 Phil. Ev. (C. & H.), 531–532.

This doctrine is no less applicable to deeds and other written instruments than to wills.  3 Phil. Ev. (C. & H. notes to part 2), p. 136, note 939.

The intent of Z. C. Fairman to mortgage the land described in the sheriff's deed, is not questioned, but it is admitted by Z. C. Fairman and his sons; nor does L. Q. Fairman deny notice of this intent prior to the sheriff's sale, but he insists that " William Adams was a judgment creditor without notice of the intent of the parties to said mortgage, and that he acquired a lien by virtue of his said judgment superior to the mortgage, and that he (Fairman) acquired a title by virtue of said sale and deed to him," freed from the mortgage.

If it were in fact true, that the lien of Adams' judgment had precedence to Foute's mortgage, because not properly admitted to record, and though this might avail Adams or a purchaser at sheriff's sale, innocent of unfair practices in any contract which they might have with Foute respecting the mortgaged property, the circumstances developed by the answer of L. Q. Fairman, and the proofs of *covin* and *deceit* practiced by him and those acting for him, to obtain the title to the property for an insignificant and nominal consideration is an estoppel on him, and he would not be

permitted to set up the prior lein of Adams' judgment in a contest between Foute and himself.

" With respect to the effect to be attributed to admissions, it is to be observed that proof of a party to the suit, having made representations of facts for particular purposes, and on particular occasions, may preclude him from relying on a case which is inconsistent with those representations, thus operating as an estoppel." 1 Phil. Ev. (C. & H. & E. notes), ch. 8, § 10, p. 453 ; 1 Greenl. Ev., § 27, 207, 208.

In another case the rule is put broader, that the party shall be estopped where his intent was to influence the other, or derive a credit or advantage to himself." 1 Phil. Ev., note 129, bot. p. 454, top 455.

" A party is bound by representations which he has made to another with a view to gain a credit or advantage." Tufts v. Hayes, 5 N. H.

" Where an admission is made by a party, which, if true, entitles another and induces him to bring an action against the party, he shall be bound, whether he spoke true or false, and the fact, with all its legal consequences, shall be taken exactly as the party stated it to be." 1 Phil. Ev. (C. &. H. & E.) 458; 1 Greenl., § 208.

*Geo. L. Potter,* for appellees.

The defendants demurred for the cause that the pretended mortgage " is not given on any particular land, and is inoperative," etc., and it is void as to Mrs. Fairman. The demurrer was overruled.

We submit that this demurrer should have been sustained as to defendant, L. Q. Fairman, who is made a party only as alleged purchaser of the land at execution sale, and if this be true, the court will not, as to him, reverse the decree dismissing the bill on final hearing.

If his demurrer was well taken he must have the

benefit of it, and ought not to be prejudiced by the fact that he was improperly retained in the cause, even though the court should be of opinion, as we think it will not, that upon the subsequent proceedings the final decree was erroneous as to him. In such a case, if the final decree would be reversed as to him, a correct practice would seem to require that the court shall go back to the demurrer and sustain it if found to be well taken, and thus the decree of dismissal would stand.

But there is a fixed rule of equity pleading leading us to the same result, and under which the final decree must stand as to him, if it be true as we suppose, his demurrer was well taken.

That rule is this: A complainant can recover only upon matters alleged in his bill, and if that be insufficient he must fail, even though the proof shows, or the answer admits, that he has a good case for relief. He can only recover upon his bill. Kidd v. Manley, 28 Miss. 160–'1; Story Eq. Pl., §§ 28, 257; 23 Miss. 6*i*.

Under this rule complainant, for want of proper averments, cannot avail himself of any admission or proof to identify the land.

L. Q. Fairman is made a party only as interested in the land by an alleged purchase under a junior judgment, and has no concern with the mortgage as a conveyance of the stock.

The bill sets out the description given in the mortgage, and contains no further description. It suggests no mistake—admits no misdescription. It describes no lands as the land intended to be conveyed, and asks no correction of the deed. It seeks only a foreclosure of the mortgage and a sale of the lands as therein described.

It is manifest that the pleader regarded the mortgage as a conveyance of the lands and as valid on its

face. We say it is void for uncertainty, and that is the issue between us.

The court will take notice that originally all the lands in Copiah were government lands, and were, so far as disposed of, sold by description according to United States surveys, into sections and subdivisions in townships and ranges.

Such was the order of law as the courts take notice. 1 U. S. Stat. at Large, 465–'6, § 2; Hazlip v. Noland, 6 S. & M. 302; Brown v. Clements, 3 How. (U. S.) 662–'3.

And thus the court knows that at the date of this deed there were, in Copiah county, many different sections of land, in different townships and ranges, having the same numbers and the same subdivisions as those mentioned in this deed, and it knows that the description contained in this deed will fit any one of the many sections 1, 2, 11, 12, as well as another. It knows that this description applies equally to every like subdivision of every section of the same number in that county. All this it reads and knows in the light of the law, from the deed itself, and without aid of extrinsic evidence. In law, the ambiguity on the face of the deed is as patent as if it had professed to convey a southwest quarter of one of the several sections numbered one, in that county, or one of the lots in Hazelhurst. 1 Greenl. Ev., § 297.

If we refer to the official map of Copiah, by Hardee, we find that even now, despoiled as it has been in the formation of the county, Copiah contains sixteen full townships and eight fractional townships. Each one of those full townships contains the very lands described in this deed, and some of the fractional contain the same. And thus, taking Copiah as now diminished, we have some twenty different tracts, each miles from the other, to which the description of this deed, so far as it goes, applies exactly.

The uncertainty is the same as if the deed had purported to convey a tract, describing it only as "a section of land in Copiah county." The reader would at once ask, "which section?" and he would so ask because there are many sections of land in that county. So here, this deed purports, among others, to convey part of "section one in Copiah county;" and the reader is compelled to pause and ask, "which one?" for he knows there are many sections of that number in the county.

It is vain to say that the description in this deed is not wholly vague and uncertain.

In Hazlip v. Nolan there was the same defect of description of land, according to government surveys, but there was also a descriptive location of the lands as on "Cypress Creek;" and this alone saved the conveyance. The court admitted that if that description had been no more than is found in the mortgage, it "would be uncertain." 6 S. & M. 301–'2.

In Doe v. Curtis, there was a deed for 330 acres of land in Jackson county, on the sea coast, west of Biloxi. The court held the description as "entirely too vague." It held that there "must be sufficient certainty in the description of land to point out its locality and distinguish it from other tracts of land." As was there said, "nothing is given to direct the mind to any particular place, or even to a particular neighborhood;" so may it be said here, there are like lands in all parts of the county, and we cannot learn from the deed where to go. 3 How. 234.

In Swayze v. Crossin, there was a conveyance of 412 acres out of a large tract. The court rejected the deed because there was "nothing to show that this 412 acres should be located in one part rather than another of the whole tract." 13 S. & M. 323.

So here, there are no descriptive or locative calls—nothing to show that these parts of sections "should

VOL. XLVIII.—35

be located in one part rather than another of the whole" county.

In McGuire v. Stevens, it was held that a contract for land must "define its identity and fix its locality, or there must be such a description of the land as, by the aid of parol evidence, will readily point to its locality and boundaries;" and if this be not done, parol evidence is inadmissible. 42 Miss. 730–'1.

To the same effect is Brown v. Guice, 46 Miss. 302–'3. See also, Allen v. Bennett, 8 S. & M. 681. The case relied on for appellants is to same effect. 5 Ohio, 453.

In controversies of this sort we must not forget that our statute of frauds applies, and that there must be a writing describing the land. Code 1857, p. 358, § 1.

The courts may not nullify the statute in unauthorized endeavors to save careless parties. And, in view of its provisions, the old rule applies with special force: "*Ambiguitas patens* is never holpen by averment, because the law will not couple and mingle matter of specialty, which is of the higher account, to that which is of inferior account in law; for that were to make all deeds hollow and subject to averments, and so, in effect, that to pass without deed which the law appointeth shall not pass but by deed." 1 Greenl. 297.

We say, therefore, this deed is void for uncertainty, and cannot be aided by intendment or proof.

We say, further, that even though parol evidence were admissible, under proper averments, so such evidence could be received under this bill for want of such averments, the court will search-this bill in vain to learn which of the twenty tracts yet in Copiah, and to which the description of this deed applies, so far as it goes, is sought to be sold to pay the complainant.

The demurrer of L. Q. Fairman should therefore have been sustained.

For the like reason, the demurrer of Mrs. Fairman should have been sustained, and also because, as shown

by the bill, she is no party to the mortgage. If she has any inchoate right of dower, she cannot be precluded by making her party to this suit.

SIMRALL, J.:

Augustus M. Foute, the appellant, brought this bill to foreclose a mortgage executed by Z. C. Fairman and wife, conveying certain lands as security for the performance of the contract therein mentioned. The lands are accurately described in the mortgage as to the county and state, and the section and fractions of sections, but omits the township and range.

The complainant states that this mortgage was duly executed and recorded in the proper office, in 1865. The indebtedness of Z. C. Fairman originated in a purchase of cotton by the complainant from him, in 1862, for which he paid Confederate money, Fairman agreeing to make delivery of the cotton. For the undelivered portion, the parties had a reckoning in 1865, when the indebtedness of Fairman was settled at $2,966.63, for which his notes and the mortgage were given.

In October, A. D. 1868, one William Adams recovered judgment in the circuit court of Copiah county against Z. C. Fairman for $419. An execution on this judgment, as averred in the bill, was levied on the lands included, or intended to be included and conveyed by the mortgage, and sold by the sheriff to L. Q. Fairman, who is made party defendant.

The object of the bill is to foreclose the mortgage, dealing with this sale by the sheriff as subordinate to the superior equity of the mortgage, and as also contrived and carried through to protect the lands against the complainant's rights.

The demurrer of the defendants was overruled. The bill was answered, proof taken, and upon final hearing the bill was dismissed.

It is abundantly shown by the testimony that the omission of the township and range, in which the lands were situated, was by mistake and accident. The mortgagor, Fairman, and the agent of the complainant consulted an attorney to draft the mortgage. The land papers of Fairman not being at hand, the attorney drafted the skeleton or formal parts of the instrument, leaving a blank space for a description of the lands. Shortly afterward, the deed in controversy was written, using the original draft as a form. Calvin Blue, a witness, gives this account of how the mistake occurred: " Witness did not think the township and range were omitted by design." " W. W. McLaurin commenced writing the mortgage, and wrote to the word section and figure ' 12,' and witness wrote the balance, supposing the description was complete." The same witness states that the purpose was to have had the mortgage written at Jackson, by W. P. Harris, attorney ; but that failed because of the absence of some of the land papers. The blank left in this deed was not sufficient to contain the description of the land, hence another deed was written.

Z. C. Fairman admits that the lands sold by the sheriff under the Adams' judgment are the " same lands intended to be included in the supposed mortgage," but does not admit " that in fact and legal contemplation they were so included," and submits that the mortgage is void and of no effect as to judgment creditors without notice of the real lands intended to described, said description being uncertain ; " admits that the lands intended to be conveyed in the mortgage were sold under the judgment."

L. Q. Fairman, the purchaser at sheriff's sale, through King, his agent for that purpose, admits that " he supposed that the lands bought by him are the lands intended to be conveyed by the mortgage ; " admits that " his brother, H. C. Fairman, under the advice of

King, the attorney-at-law, gave notice at the sale that the lands were the same as those in the mortgage ; was prepared to give more than the amount of his bid ($50) if the land had been run up on him, but thought, in common with others, that he might make a good bargain if opportunity offered."

The admissions of the defendants and the testimony conclusively establish that the township and range were accidentally omitted ; that Z. C. Fairman intended to give a complete identification of the lands ; that L. Q. Fairman had notice and knowledge of this accidental mistake before and at the time of his purchase under the judgment. With this knowledge on the part of the father (the mortgagor) and his son (the purchaser), it is further proved that the advice of their attorney was taken, whether that circumstance did not make the mortgage inoperative and void. The advice was favorable to them ; and thereupon the attorney of the debtor and the proposed purchaser furnished the sheriff with the description of the lands, who, at his instance, made the levy. Parcel of the same advice was, that H. C. Fairman, another son of the debtor, and brother of the proposed purchaser, should give public notice at the sale that the land was incumbered by the complainant's mortgage. The notice was proclaimed for one of two purposes : either to warn bidders that they would not acquire the fee title, but only the equity of redemption ; or to drive off competition, so as to enable one of the debtor's family to buy in the property cheap. It does not appear that those present were informed that there was a mistake in the mortgage, and that the debtor and mortgagee had been advised by counsel that for such reason the deed was void.

It is important to form a distinct conception of the nature and quality of a judgment lien. It does not confer a property or right in the land upon which it operates. Conrad v. Atlantic Ins. Co., 1 Pet. 443. It

is a "right" to a satisfaction of the judgment out of the property, superior and in preference of any adverse interests "subsequently" acquired. Subsequent incumbrances and conveyances are subordinate to the lien, and are of no avail as against a purchaser under the judgment. No act done or suffered by the debtor, subsequent to the lien, will affect, prejudice or displace it. The right of satisfaction and sale is limited to the interest of the debtor in the property. The lien is, therefore, subject to all equities which exist "at the time" in favor of third persons. Walton v. Hargroves, 42 Miss. 26. It is but a general (not a specific) lien, and the judgment creditor acquires thereby no higher or better right to the property of the debtor than the debtor himself had when the lien arose. Brown v. Pierce, 7 Wall. 218. These principles are fully accepted in this court. The judgment in favor of Adams being "subsequent" to the mortgage, was subordinate to all the equities of the appellant. The judgment creditor had no "higher or better right to the property than the debtor himself had." If Z. C. Fairman had created a charge of equity upon the property by the mortgage in favor of Foute, then the judgment lien was subordinate to it. If the mortgage, for the uncertainty, was void as to Fairman, so it would be as to his judgment creditor. Is the deed absolutely void for uncertainty? We know that there are several tracts of land in Copiah county to which the descriptive words equally apply. It requires, therefore, if the deed shall take effect at all, that extrinsic evidence shall be employed to identify what particular lands were meant. This is a latent ambiguity, which is made to appear by extrinsic evidence. The only object for which such evidence may be received, is to point out the identity of the subject. The description in the writing must be accepted as true so far as it goes; parol testimony cannot contradict or vary it. But where the grant applies indifferently to

several subjects, then it may be proved *aliunde* which was meant.

The familiar illustrations of the principle given in the books are, a devise of the manor of B., or a devise to the devisor's nephew, John; if there be two manors B., or two nephews John, a latent ambiguity arises, and extrinsic evidence is resorted to to distinguish which property or person was intented. It will be observed that it would have been easy for the devisor to have given a further and more definite description of the subject or of the person, so as to have dispensed with testimony in aid of the meaning,   Such testimony does not conflict with the description in the instrument, but only serves to make precise and certain that which by reason of generality of description is left uncertain. Carmichael v. Foley, 1 How.   Latent ambiguities in deeds and wills have been several times considered in this court, and the extent to which extrinsic testimony may be used to give direction and certainty to a general description.   Hanna v. Renfro, 32 Miss. 125; Hazlip v. Noland, 6 S. & M. 294; McCaleb v. Pradat, 25 Miss. 267; Whitworth v. Harris, 40 ib. 483; Peacher v. Straus, 47 Miss.; Dixon v. Cook, ib.

As to the identity of the lands the case stands thus: The complaint avers that Z. C. Fairman conveyed or intended to convey the same lands bought by his son at sheriff's sale; both the father and son, in their respective answers, admit the averment in effect to be true.    The bill, however, does not state in what consists the difference in the description of the lands mortgaged and the lands bought at sheriff's sale.    The answers identify the lands to be in township 8, range 5, east. It is in evidence that these lands constitute a plantation upon which the mortgagor and his family had resided for many years.   Being the owner and in possession of lands corresponding to the sections and parts of sections mentioned in the mortgage, and there

being no evidence that the mortgagor owned other lands corresponding to the description, or any other lands in Copiah county, go far to point out the range and township.

But L. Q. Fairman bought with notice that the lands levied upon were the same lands included in the mortgage. He, therefore, has no right to expect that he could acquire more than the equity of redemption. Included in the mortgage, in addition to the lands, was also personal property. The mortgagor admits that he has part of it in possession. As to that the complainant would be manifestly entitled to a sale and its proceeds.

As the case must be remanded to the chancery court, the complainant must be required to amend his bill with allegations containing a proper and full description of the lands intended to be mortgaged, and also that the range and township in which they are located were omitted from the deed by accident and mistake, with a prayer that the deed may have effect, and be rectified so as to embrace by descriptive words the mortgage property.

It is highly probable, if the bill had contained such allegations, looking to a reformation and correction of the mistake as well as to a foreclosure, the relief which he sought would have been granted.

This record abundantly shows the mistake; it further shows that the purchaser at the sheriff's sale was aware of the lands which his father supposed that he had mortgaged; in other words had knowledge of the mistake.

Decree reversed, and cause remanded for further proceedings in accordance with this opinion.