## CLARISSA MURDOCK *v.* CHARLES CHAFFE ET AL.

1. TAX-TITLE. *Sale to state and levee board. Quit-claim of state's title. Acts 1884, p. 182.*

    Where land held by the state under tax sale was afterwards purchased by the levee board, and this title was sold by the commissioners under the chancery decree in the case of *Green* v. *Gibbs*, the purchaser thereof, in applying for a quit-claim of the state's title under the act of March 14, 1884, was only required to pay, or produce evidence of having paid "all state, county and levee taxes due" on the land which accrued *subsequent to his purchase from the commissioners under said decree*, and this without reference to the length of time the land was delinquent before such purchase.

2. SAME. *Failure to collect all taxes due. Auditor's deed void. Acts of officer under statutory power.*

    In such case, although the purchaser offers to pay all that is required, and the auditor executes a quit-claim deed, reciting payment of all taxes, when in fact the taxes for one year have not been paid, the deed will be

void. A party claiming under a statutory power of sale by an agent of
the state must see to it that the precedent facts exist warranting the ex-
ercise of the power. *McCulloch* v. *Stone*, 64 Miss. 378, cited.

FROM the chancery court of Leflore county.

HON. WARREN COWAN, Chancellor.

The land in controversy was sold to the state July 6, 1868, for
the taxes of 1867. The sale was irregular because the board of
police in levying the taxes exceeded the limit allowed by law.
While the land was held by the state under this tax sale, on the
9th day of May, 1870, it was sold to the liquidating levee com-
missioners for the levee taxes due thereon for the years 1867 and
1869. This sale was void because made for two years' taxes, and
besides, the land was then held by the state. Under the decree of
the chancery court of the first district of Hinds county in the case
of *Green* v. *Gibbs*, such title as the levee commissioners had was
purchased by the appellee, Chaffe, and he received a deed. The
land being held by the state under the sale of July 6, 1868, was
sold under the abatement act of 1875, and was again purchased by
the state. On March 14, 1884, the act for the benefit of purchasers
under said chancery decree was passed. This act is quoted in full
in the opinion of the court. Under it, on January 1, 1885, the
said Chaffe, who held the levee tax-title, applied for and obtained
from S. Gwin, the then auditor, a quit-claim deed, releasing and
conveying to said grantee the title of the state. It recited that all
taxes had been paid, and only the fee for executing the deed was
collected. Afterwards, the appellant, Clarissa Murdock, on De-
cember 8, 1886, claiming that this quit-claim was void, applied to
W. W. Stone, auditor, to purchase said land under the general law.
She paid $137.49, the state, county and levee taxes due thereon
from and including the year 1874, together with all fees and costs,
and received a deed in due form of law conveying said land to her.

She then filed the bill in this case to cancel the title asserted
by Chaffe, and to confirm her own. She set up the invalidity
of the sale to the levee board in 1870, and averred also that
the quit-claim deed received from the auditor was void, because
the taxes had not been paid, as required by the act of 1884, the

theory of the bill being that all taxes from the year 1874 were collectible, and that it was incumbent on the auditor, before executing the quit-claim, to collect such taxes, or to be satisfied by the production of tax receipts that the same had been paid. The bill alleged that Chaffe paid the auditor nothing except the legal fees, and that he produced no tax receipts except for 1879 and subsequent years. On final hearing the above facts were shown, and the testimony also showed that the agent of the appellee, Chaffe, applied to purchase the land in 1883, and offered to pay any amount necessary for that purpose, when the auditor informed him that the land was not held by the state, and gave him a written statement to that effect. Afterwards, on January 1, 1885, Chaffe, through his agent, applied to the auditor for the issuance of a quit-claim under the provisions of the act of 1884, and again offered to pay any amount necessary or required in order to obtain said quit-claim, when the auditor, after an examination of the records, announced that nothing was due, and issued the quit-claim on payment of fees only.

It was admitted by complainant that the taxes on the land for 1879 and subsequent years had been paid.

The court refused to confirm complainant's tax-title, but entered a decree fixing a lien on the land for part of the money paid by her on obtaining the deed from the state.

The other facts necessary to an understanding of the case are stated in the opinion.

*Brame & Alexander*, for appellants.

1. The levee tax-title, under which Chaffe claims, is based on a sale made in 1870. As the state then held the land under the sale in 1868, the sale to the levee board was void. Under the act of 1860, after the lapse of five years, the title of the state became unassailable, except for fundamental defects, and it is not claimed that there were any here. *Sigman* v. *Lundy*, 66 Miss. 522.

The land, being thus held by the state, was again sold under the abatement act in 1875, when the state purchased, and there is nothing shown against the validity of that sale. So we have not

only the five years' lapse of time, but, in addition to that, the sale under the abatement act, which makes the title we acquired from the state perfect.

2. The pretended quit-claim obtained by Chaffe from the auditor on January 1, 1885, was void, because nothing was paid except the fees for issuing it. By the second section of the act of 1884, the auditor is required in express terms to collect all state, county and levee taxes due on lands before executing such a quit-claim. The taxes were due on this land from and including the year 1874. They had never been paid, and had never been abated or released. Therefore, it was the duty of the auditor to collect all taxes from 1874 to 1885 before executing this quit-claim. We submit that the construction sought to be placed on that act by opposite counsel is incorrect. They contend that a purchaser under the decree in *Green* v. *Gibbs,* in obtaining the quit-claim is only required to pay the taxes accruing after his purchase from the commissioners, whereas, we contend that all taxes were to be collected back to 1874. To illustrate the fallacy of the position of opposite counsel, let us suppose that A. and B. owned adjoining plantations, both of which had been sold to the levee board in 1870, and both are owned by the state under a previous sale. A. gets a deed from the levee commissioners in 1877, and B. obtains one in 1881. Under the act of 1884 they both go into the auditor's office at the same time to obtain a quit-claim from the state. According to the construction contended for, B. will have to pay from 1881, whereas A. would be required to pay from 1877, or four years longer. Certainly a construction imposing such inequality cannot be sustained.

3. But, suppose we are wrong in the position just discussed. The bill charges positively that the taxes for 1877 and 1878 were not paid, and this is not denied in the answer. So, even under the construction urged by opposite counsel, this quit-claim is void, for Chaffe purchased from the levee commissioners in 1877.

4. The fact that the auditor assumed to issue the quit-claim deed, without compliance with the statute, cannot protect the defendant. The auditor is a ministerial officer. He had no discretion in the matter, and was not empowered to do anything

except as authorized by the statute. All he had to do when the application was made for this quit-claim was to examine the records and collect the amount of taxes due. Failing in this plain duty, the quit-claim executed by him was void. *Matthews* v. *Goodrich*, 102 Ind. 557 ; *Drew* v. *Valentine*, 18 Fed. Rep. 712 ; *Parkersburg* v. *Brown*, 106 U. S. 487 ; *Myers* v. *The State*, 61 Miss. 138 ; *McCulloch* v. *Stone*, 64 Ib. 378 ; *Hardy* v. *Hartman*, 65 Ib. 504.

Obtaining the quit-claim under the act of 1884 was a purchase of the state's title, and not a *redemption*, as was held in *Paxton* v. *Valley Land Co.*, *ante*, 96. We admit that there are authorities which hold that, if through inadvertence or fraud of the officer, a tax-payer, in endeavoring to redeem his land, fails to pay the full amount due he is not cut off, provided he offers within a reasonable time to pay the balance. In that case the tax-payer has the title to the land, and there is only a *lien or charge* upon it for the taxes ; but in this case the state held the absolute title, and gave these purchasers the extraordinary opportunity to *purchase* the land within a limited time, upon the express condition that all the taxes should be paid. As in the case of the United States lands, no officer of the state is authorized to divest the state's title in the sale of lands without complying literally and strictly with the statute giving the power. *Swann* v. *Miller*, 82 Ala. 530 ; *Whiteside* v. *United States*, 93 U. S. 247 ; *Green* v. *The State*, 56 Miss. 771.

5. Although the appellee appears here as a buyer-up of tax-titles, he was in default as to the payment of taxes due the state at the time of appellant's purchase, and has continued so ever since. He does not offer now, and has never proposed to pay all the taxes due. On this point, see *Blazier* v. *Johnson*, 11 Neb. 404 ; *Miller* v. *McGehee*, 60 Miss. 903.

6. There is nothing in the alleged offer to pay all the taxes. The testimony clearly shows that the effort was to obtain through the quit-claim the title of the state without paying *anything*. It was incumbent on the auditor to collect all the taxes, and his failure to do so vitiated the quit-claim and left the title in the state, where it was vested when we purchased.

*Rush & Gardner,* on the same side.

1. Whether the state's title was unimpeachable at the time of the sale to the levee board was immaterial, since it afterwards became so. *Sigman* v. *Lundy,* 66 Miss. 522.

2. The appellee did not acquire the title by the pretended quit-claim made in January, 1885, because the taxes from 1874 up to that time were not paid. *McCulloch* v. *Stone,* 64 Miss. 378.

3. The state was not estopped to question the validity of this quit-claim, nor is the appellant, as a subsequent purchaser from the state. As we understand the doctrine of estoppel, there is not a single requisite in this case to sustain its application. See *Turnipseed* v. *Hudson,* 50 Miss. 429 ; 6 Wait's Ac. & Def. p. 681, and authorities there cited. The doctrine of estoppel does not apply to the state. *Taylor* v. *Shufford,* 4 Hawks (N. C.), 116. Nor is a grantee estopped to deny what the state is at liberty to assert. *Candler* v. *Lunsford,* 4 Dev. & Bat. (N. C.) 407. Nothing less than legislative enactments can estop the state from asserting its right to property. *Alexander* v. *The State,* 56 Ga. 478 ; 6 Wait's Ac. & Def. 680, 688 ; *McCulloch* v. *Stone, supra.*

There is no sufficient evidence of a tender in this case. *Harmon* v. *McGee,* 57 Miss. 410. See particularly the language of the court on page 417, and authorities there cited, including *Potts* v. *Plaisted,* 30 Mich. 149.

*Nugent & McWillie,* for appellee.

1. We do not think the contention of opposite counsel in respect to the act of 1884 is correct. That act was for the benefit of purchasers under the decree in *Green* v. *Gibbs.* By construing both sections of the act together, and taking into consideration the history of the legislation, and the purpose had in view, we submit that it was only incumbent on the auditor in issuing the quit-claim to collect such taxes as had accrued *subsequent to the deed from the levee commissioners in* 1877. This construction of the law is further fortified by the consideration of the act of 1888 on the same subject. See Acts 1888, p. 40.

2. The appellee, Chaffe, applied to the auditor, offering to pay all

taxes in order to secure the title. He attempted in good faith to acquire the title, and was ready to pay the money, when the auditor informed him that the state had no claim to the land. Subsequently, on advice of counsel, he applied again for the quit-claim authorized by the act of 1884, exhibited his tax receipts for the taxes from the year 1878, and offered to pay any further sum of money that was necessary. The auditor, after examining his books, informed him that no further taxes were due, and executed and delivered the quit-claim, upon payment of the costs therefor. The appellee did all that he was required to do. The auditor was charged by law with the duty of determining the amount. Appellee had no means of ascertaining it, except through him. In view of this, we think that the title acquired by the appellee is good as against any subsequent title derived from the state. Cooley on Taxation, 367 ; Black on Tax-Titles, 186 ; *Noble* v. *Bullis*, 92 Am. Dec. 442, and authorities cited.

The case of *McCulloch* v. *Stone*, 64 Miss. 439, is not an authority in support of the position of counsel. The proposition we now urge was not decided in that case. The court expressly disclaimed any purpose of deciding the question now at issue, and only decided that the lands involved in that case were not exempt from taxation, and that it was the duty of the auditor to give a deed. The effect of a quit-claim given under the act of 1884 was not involved, and was not then passed upon. It would give rise to very grave complications if the court should now hold that the many hundreds of thousands acres of lands that have been acquired through quit-claims from the auditor, under the act of 1884, should be upset and declared void for such reasons as are now urged, and that, too, without default of the grantees.

The position assumed by counsel for appellants would lead to manifestly unjust results, for if the failure to pay $50 would defeat any title acquired by the purchaser from the state, the failure to pay five cents would have the same effect. It is not necessary that there should be an absolute tender of any particular amount. The purchaser did not know the amount, but he stood ready to pay all that was required.

Argued orally by *L. Brame*, for appellant, and *T. A. McWillie*, for appellee.

COOPER, J., delivered the opinion of the court.

The first question presented by the record arises upon a construction of the act of March 14, 1884, entitled, "An act for the benefit of purchasers of levee lands sold under the decree of chancery court of Hinds county, first district, in case of *Joshua Green and others against Hemingway and Gibbs, auditor and treasurer, and ex officio liquidating levee commissioners.*" Acts 1884, p. 182. By the first section of that act, it is provided that, "the auditor of public accounts be, and he is hereby authorized and directed to make, execute and deliver to all purchasers of lands in the liquidating levee district sold under the decree of the chancery court for the first district of Hinds county, in the case of Joshua Green and others against Hemingway and Gibbs, then auditor and treasurer, and *ex officio* liquidating levee commissioners, and others, and to all persons claiming under said purchasers by descent or purchase, a quit-claim of the title of the state to the land or lands sold under said decree by the commissioners of said chancery court, upon payment to said auditor of the usual fees for making conveyances by him as now provided by law, if applied for within twelve months after the passage of this act: provided, that nothing herein contained shall be so construed as to abate any levee taxes whatever, either liquidating or otherwise, which had accrued upon said lands, or any of them, prior to the first day of January, 1883, but, as to all such levee taxes, either paid or not paid, they shall, if now paid in, and, if not yet paid in, they shall, when collected, be distributed by the liquidating levee commissioners as now provided by law: and provided, further, that nothing herein contained shall be so construed as to repeal any law now in force, or which may hereafter be passed, providing for the collection of levee taxes upon any of said lands in the Mississippi levee district or in the district for the board of levee commissioners for the Yazoo-Mississippi delta : and provided, further, that no such quit-claim shall be made until all liquidating levee taxes, or other levee taxes, on said

lands, shall have been paid." Section 2 is as follows : "Said auditor of public accounts shall not in any case execute such quit-claim deed described in the foregoing section unless all state, county and levee taxes due thereon up to the date of the execution of the quit-claim deed as aforesaid shall have been paid: provided," etc.

This act is an illustration of the confused and unintelligible legislation so commonly seen, in which matters of great importance are dealt with without any clear views being entertained of the subject. It is inconceivable that a definite purpose, clearly understood, should be so confusedly stated, and so covered up, and limited by, vague exceptions and provisos. Looking to the three provisos to the first section, it seems probable that they were added to that section, and then that some one, appreciating the confusion thereby caused, introduced the second section of the act as a substitute for them, intending to have them eliminated, but that by inadvertence they were left in the act. It may be, however, that in the course of time some specific purpose to which they were directed may be discovered. We are unable to conceive what office they can perform that is not covered by the second section ; and, since they are not supposed by counsel to be operative, in any particular direction, in reference to the matters involved in this cause, we deal with the act as consisting of the body of the first section only, and the second section.

The appellee, Chaffe, was the purchaser of the lands in controversy from Hemingway and Gibbs, and, it is conceded by the appellant, that he was entitled to have the quit-claim deed provided for by the act upon payment of "all state, county and levee taxes due thereon up to the date of the execution of said deed."

The controversy springs from conflicting tax-titles—one derived from a sale to the state, and the other from a sale to the levee board for levee taxes. The complainant claims to be the owner of the title derived under the sale to the state, and seeks to show its superiority over the title derived from the sale to the levee board, which, she contends, is the only title held by the defendant. The defendant claims to hold not only the title derived from the sale for levee

taxes, but that he has also secured that arising from the tax-sale to the state. The history of these titles is as follows: (1) A sale to the state, July 6, 1868; (2) A sale to the levy commissioners, May 10, 1870; (3) A sale to the state under act of March 1, 1875 (Abatement act), May 10, 1875. These are the conflicting tax-titles. On December 24, 1877, Chaffe bought the lands from Hemingway and Gibbs, commissioners of the court in case of *Green* v. *Gibbs,* and received their conveyance. On January 1, 1885, the auditor, under the act of March 14, 1884, executed a quit-claim of the state's title to him, reciting therein that all taxes then due had been paid. On December 8, 1886, the auditor, in consideration of the payment of all taxes then due, conveyed the lands to complainant, Mrs. Murdock. Mrs. Murdock's contention is that the second section of the act of March 14, 1884, prohibited the auditor from conveying by quit-claim deed the state's title to the lands, unless all taxes from and including the year 1874, and up to the year in which the deed was made, were paid. On the other hand, Chaffe contends that by said section the auditor was only required to collect, or to be satisfied by proof of the fact that all taxes accruing after the sale by the liquidating levee commissioners had been paid. This is the principal point of controversy between the parties.

We are of opinion that the construction of the act of 1884 contended for by the appellee, Chaffe, is to this extent correct. The lands lying in the delta counties of this state have been since the year 1858 subject to two systems of taxation, one by the state and counties, for state and county purposes, the other, under district levee laws, for raising funds to build and maintain levees for protection against the waters of the Mississippi river. All lands located in this region, and owned by individuals, were at the time of the tax-sales above noted subject to be sold for the non-payment of either tax. If sold for the non-payment of state and county taxes, they were, if not bought by individuals at such sale, struck off to the state, and while so held were exempt from taxation for levee purposes. If sold for the non-payment of levee taxes, they were, if not purchased by individuals, struck off to the

levee board, and while so held were "exempt from state taxation, for levee purposes or otherwise, until the same shall be sold or disposed of by the board : provided, that any party seeking to redeem any land so struck off to the board under the provisions of this act shall, before he is permitted to redeem the same, pay all state, county and levee taxes that would have been due and payable on said land if the same had not been struck off to such board, but had remained the property of the person offering to redeem." Act February 13, 1867, § 13, p. 247. The lands in controversy were not redeemed .by Chaffe from the levee commissioners, but were sold as the property of the board. If, therefore, the title derived from the sale for levee taxes was a valid one, said lands would only have become again taxable by the state after the date of the conveyance to him, December, 1877.

It will be noted that, under the operation of the act of 1867, any tax-sale made to the levee board was invalid if the land had been previously legally sold to the state for · taxes, and continued its property. So, also, any tax-sale made to the state was invalid if the land had been previously sold to the levee board by a valid tax-sale. Hundreds of thousands of acres were claimed both by the levee board and the state under tax-sales. Aside from the questions affecting the validity of these sales because of failure of conformity to the provisions of the laws under which they were sold in other respects, the conflicting claims of the state and levee board stood as an almost insuperable obstacle to purchasers. Neither the state nor the levee board could sell, for no one would risk one title which was in danger of being overturned by the other. The lands were in mortmain as to revenue by taxation. The constant effort of the state, as exhibited by the legislation from 1872 to the present time, has been in the direction of getting these lands into the hands of private persons, where they might be taxable, by offering liberal abatement of prior taxes due thereon, or by releasing the claims of the state where they conflicted with other tax-titles, under which ownership was asserted by individual purchasers.

The evident purpose and scheme of the act of 1884 was to give

security to the holders of levee titles, by vesting in them the state's title, if by chance that acquired from the levee board was invalid, and that held by the state was good. If the title of the levee board was valid, nothing was added by securing the quit-claim from the auditor; but, if that derived from the commissioners was invalid, it was thought that the purchasers might be secured by investing them with another title—that held by the state—and which might be efficient to protect their possession. The legislature was not swayed by sentiment either for or against the claimants of the levee board title. Its purpose was to encourage the continued private ownership and development of the lands of the delta, to the end that the state might secure a revenue from the annual taxes on the lands. The construction of the act of 1884 contended for by appellant would result in the assertion of a claim by the state to an adversary title to the lands unless the claimant should, within the year prescribed, pay the state, not only the taxes that had accrued since the conveyance by the levee commissioners, but also state and county taxes accruing during the time when the levee board was, or claimed to be, the owner.

If the first section of the act stood alone, it is conceded that the auditor might have made a conveyance without demanding the payment of any sum whatever; but it is supposed that, by the second section, he was required to collect all state, county and levee taxes, without regard to the time when they accrued. The language of the second section excludes this construction, unless it shall be contended that the state desired and intended to collect taxes not due, or to put upon the auditor the duty of determining as between the titles of the state and that of the levee board. Take the case in controversy as an illustration. If the sale to the levee board was valid, there were no state taxes due on the lands, until after they were sold to the appellee. If, on the other hand, the levee board's title was invalid, and the state's title good, there were no levee taxes due. The act requires, as a condition precedent to the execution of the quit-claim deed, the payment of all state, county and levee taxes. Before the applicant can accept the conveyance, under the rule of construction contended for, he must either pay the state

and county and levee taxes, though either those to the state and county, or those to the levee board, were not charges on the land, or he must at his peril determine which of the two titles is superior. The rule of construction adopted by us is not only in line with the manifest scheme of the legislature, but removes from the investigation by the auditor the question of the relative superiority of the conflicting titles. We are, therefore, of opinion that, under the act of 1884, it was only incumbent upon the auditor to collect such taxes as had accrued against the land after its conveyance by the levee commissioners, or to require proof that such taxes had been previously paid.

The next question presented is as to the validity of the conveyance executed by the auditor to the appellee Chaffe. He bought the land from the levee commissioners in December, 1877. They were, therefore, taxable for the year 1878, and, unless this tax had been previously paid, or was then paid, to the auditor, the deed provided for by the act of 1884 should not have been executed. The deed from the auditor recites that evidence was furnished him that all taxes due had been paid, but the bill avers that the taxes of the year 1878 were not paid; and there is no denial in the answer of this averment, and no evidence in the record, aside from the recital of the auditor's deed, that they were in fact paid. We cannot concur in the view pressed upon us by counsel for appellee, that the offer by appellee to pay all taxes due, and the reply by the auditor that none were due, is sufficient to uphold the validity of the deed, even though the taxes of 1878 were due, and should have been collected. The rule seems to be well established, and upon just grounds, that a party claiming under the exercise of a statutory power of sale by an agent of the state must see to it that the precedent facts exist warranting the exercise of the power. The authority of the auditor is limited and defined by the act by which it is conferred. No one can be deceived as to its extent, or the circumstances and conditions under which it may be exercised.

In *Lee* v. *Monroe*, 7 Cranch, 366, a question of similar character was presented to the supreme court of the United States, and it was held that one dealing with a public officer must at

his peril take notice of his power to convey. The court said: " Were it otherwise, an officer intrusted with the sales of public lands, or empowered to make contracts for such sales, might, by inadvertence, or by incautiously giving information to others, destroy the lien of his principal on very valuable and large tracts of real estate, and even produce alienations of them, without any consideration whatever being received. It is better that an individual should now and then suffer by such mistakes than to introduce a rule against an abuse of which, by improper collusions, it would be very difficult for the public to protect itself." See, also, *Mayor* v. *Reynolds*, 20 Md. 1 ; *Denning* v. *Smith*, 3 Johns. Ch. 331 ; *Whiteside* v. *U. S.*, 93 U. S. 247 ; *Mayor* v. *Eschbach*, 18 Md. 276 ; *State* v. *Hays*, 52 Mo. 578 ; *Delafield* v. *Illinois*, 26 Wend. 192 ; *Swann* v. *Miller*, 82 Ala. 530 ; *McCulloch* v. *Stone*, 64 Miss. 378.

We think it is clearly shown by the record that the controversy in the court below was directed to the question arising from the construction of the act of 1884 ; and though, as the pleadings now are, it would seem to be conceded that the taxes for the year 1878 were not in fact paid by the appellee to the auditor, we will not enter a final decree here, but remand the cause, in order that the appellee may, if he is so advised, secure leave to amend his answer.

*Decree reversed, and cause remanded.*