LOUISVILLE, NEW ORLEANS & TEXAS RAILWAY CO. *v.* ALFRED BUFORD.

1. TAX TITLES. *Sale to levee board. Law vesting title in state. Invalidity of subsequent sale. Purchaser under same acquires state's title.*

   Where lands were sold for taxes in 1867 to the board of levee commissioners created by the act of November 27, 1865 (Laws, p. 51), commonly called the "Ten Cent Levee Board," the title thereto afterwards passing to the state under the act of April 11, 1876 (Laws, p. 166), any subsequent sale thereof to the state or to the board of levee commissioners created by the act of February 13, 1867 (Laws, p. 237), commonly called the "Liquidating Levee Board," prior to redemption or purchase under the sale of 1867, is void, but a purchaser under a subsequent void sale to the state will acquire the title vested in the state by the previous valid sale and

legislative enactment. *Shotwell* v. *Railway Co.*, 69 Miss., 541; *Caruthers* v. *McLaran*, 56 *Ib.*, 371; *Gamble* v. *Witty*, 55 *Ib.*; 26; *Paxton* v. *Land Co.*, 68 *Ib.*, 739, cited.

2. SAME. *Purchase from state. Payment of accrued taxes. Code* 1880, § 561, *construed.*

A purchase from the state, in 1883, of land sold to the state in 1882, for the taxes of 1881, is not void because the auditor did not require payment of all taxes on the land for all the years extending from 1874 to 1882, inclusive. Unlike the act of March 14, 1884 (Laws, p. 182), which required that the auditor, on executing conveyances thereunder to the purchasers of lands sold under the decree in *Green* v. *Gibbs*, should collect "all state, county and levee taxes due thereon up to the date" of the deed, section 561, code 1880, under which the purchase in 1883 was made, required payment of "all taxes for which the land was sold, and all costs incident to such sale, and of all taxes and costs accrued thereon since such sale," which means any particular sale under which the purchaser might buy, and such taxes and costs as have accrued since that sale. *McCulloch* v. *Stone*, 64 Miss., 378; *Murdock* v. *Chaffe*, 67 *Ib.*, 740, distinguished.

3. SAME. *Adverse possession. Occupancy of part of tract. Twelve months' limitation. Act of* 1888 (*Laws, p.* 40), *construed.*

Where the defendant, in a proceeding to remove clouds upon complainant's title, has actually occupied, for more than twelve months, a part of a tract, the whole of which is included in his conveyance from the commissioners in *Green* v. *Gibbs*, and also in the auditor's deed made to him under the act of March 2, 1888 (Laws, p. 40), and who claims the whole adversely to the complainant, who is the holder of a perfect paper title to the entire tract, and has, throughout the defendant's occupancy of the part mentioned, actually occupied another part of the tract, claiming the whole, he (the defendant) cannot, except as to the part actually occupied by him, avail of the limitation of twelve months prescribed by said act of 1888 in favor of those who occupy a tract of land, or any part thereof, under a deed from said commissioners or the auditor's deed provided for by said act, to defeat the complainant's claim, since the law adjudges the seizin of all that is not in the actual occupancy of the adverse party to him who has the better title.

FROM the chancery court of Bolivar county.

HON. A. H. LONGINO, Chancellor.

This was a proceeding by the appellee, Buford, against the appellants, the Louisville, New Orleans & Texas Railway Co. and Abram Williams and William Lightfoot, to remove clouds upon his title to the southwest quarter of section 25, township 24, range 7, in Bolivar county. He set up the following by way of deraignment of title: On April 15, 1867, said land was sold to the "Ten Cent Levee Board" for levee taxes; that afterwards it was sold to the state for the taxes of 1871, and duly listed to the state, thereby coming within the terms of the act of April 11, 1876, which vested title thereto in the state; that, on November 5, 1874, one Jackman, who claimed to own it, conveyed it to J. P. Tobin & Co.; that, under a bill filed by the creditors of that firm, it was decreed to be sold, and was sold, on November 31, 1881, Charles Scott and F. A. Montgomery becoming the purchasers and receiving a deed from the commissioner; that, on March 6, 1882, it was sold to the state for the taxes of 1881, and, on March 12, 1883, was conveyed by the state to Charles Scott, whereby all the title of the state was alleged to have vested in Scott; that, on February 19, 1887, Scott and Montgomery conveyed it to complainant. Complainant also claimed to have title under the ten years statute of limitations, and the limitation of three years prescribed by § 539, code 1880, in cases of actual occupancy, which, he claimed, was had under the state's deed to Charles Scott.

The defendants answered, setting up that, on the proper day of a year not stated, the land was sold for taxes to the liquidating levee board, and was held by that board until October 3, 1881, when it was sold and conveyed by the commissioners in *Green* v. *Gibbs*, to the Memphis & Vicksburg Railroad Co., all of whose rights therein had passed to the defendants; that this was a paramount title, but, in addition thereto, the state claimed to own the land by virtue of a sale under the "abatement act" of March 1, 1875, and also claimed the same under the act of April 11, 1876, and that, on May 23, 1888, the auditor, under the provisions of the act of March 23, 1888,

conveyed the land to the defendant railway company. They denied that Charles Scott's conveyance from the state vested any title in him, for the reason that he and Montgomery purchased the land at the sale, under the auditor's bill, as trustees for various creditors of J. P. Tobin & Co., and the sale operated as a redemption, in view of Scott's fiduciary character. They also plead, in bar of complainant's claim, actual adverse possession by Williams and Lightfoot, who were grantees of the defendant railway company for more than one year prior to institution of suit, relying on the act of March 2, 1888, to sustain their claim of a perfect and inexpugnable title, by reason of such occupancy. They made their answer a cross bill, and prayed that complainant's alleged title be canceled as a cloud upon their title, etc. In his answer to the cross bill, the appellee plead three years actual occupancy and the bar arising under § 539, code 1880; charged that Scott acquired, by his purchase in 1883, all the title vested in the state by the previous sales for taxes and legislation; denied that any of the defendants had been in possession or actual occupancy for one year prior to the institution of suit, and insisted that the defendants could not invoke the act of March, 1888, for the reason that the claim of the liquidating levee board had been barred by the ten years and three years statutes of limitations, prior to the passage of said act, etc. The nature of such parts of the evidence as it is material to consider, is sufficiently indicated in the opinion. The complainant was granted the relief prayed for, and defendants appealed.

*Charles Scott*, for the appellants.

1. The sale to the state in 1882 was void because made under a so-called special assessment for Bolivar county, which was unsupported by any order of the board of supervisors directing it to be made. Acts of 1878, p. 330. Charles Scott, even if that sale be treated as valid, acquired no title by his purchase in 1883, for, in view of his fiduciary character at the time, it

operated as a redemption. *McLaughlin* v. *Green*, 48 Miss., 209; *McGee* v. *Holmes*, 63 *Ib.*, 50; *Cohea* v. *Hemingway*, 71 *Ib.*, 22. He and Montgomery only quitclaimed to the appellant as trustees, and any individual title that Scott may have had remained in him. *Cohea* v. *Hemingway*, *supra*. Scott's vendee stands in his shoes so far as his inability to assert title under the purchase in 1883 is concerned. *McGee* v. *Holmes*, *supra*.

2. The deed from the auditor to Scott in 1883 was void, because that officer did not exact payment of any accrued taxes save those of 1881 and 1882, which was contrary to the requirements of § 561, code of 1880. In default of payment of all accrued taxes from 1874 to 1882, the auditor could not convey the land, such payment being a condition precedent to the exercise of that power. *McCulloch* v. *Stone*, 64 Miss., 378; *Murdock* v. *Chaffe*, 67 *Ib.*, 752; *Wynne* v. *Stone*, 69 *Ib.*, 85. While the cases cited involved a purchase under the act of 1884, the principle is the same. In both the right of the auditor to convey was derived from statutory power, the exercise of which was conditional upon a payment of all taxes due. The decisions holding that a conveyance by the state under any special sale imparts what title the state has under any other sale, were rendered in cases where the consideration paid and recited in the deed in fact covered all taxes due. Otherwise they would not be in harmony with the cases above cited. In the cases of *Gamble* v. *Witty*, 55 Miss., 27; *Caruthers* v. *McLaran*, 56 *Ib.*, 377, both of which relate to sales under the "abatement act," it was not suggested that the auditor had not all the taxes due. The theory of those cases is that, in reselling land in 1875, under the abatement act, the state did not intend to release its claim to any property. If it had a good title, it would continue to have it, but if, perchance, its title was invalid, it would endeavor, by this sale, to mend its hold, though, in purchasing thereafter from the state, all taxes prior to the fiscal year of 1874 were remitted. No previously

accrued taxes could, therefore, have been due, and these cases are without application.

3. The statute of limitation of ten years did not bar defendant's claim. If that statute operated against the liquidating levee board, an agency for the collection of taxes, deriving all of its authority from the state, it certainly did not as against the state itself, which acquired title to the land under the act of April 11, 1876 (Laws, p. 166). The three years limitation of § 539, code 1880, cannot be invoked by the appellee, for the reason that the state's title was never in Scott, and did not, therefore, pass to appellee by the deed of Scott and Montgomery, trustees.

4. Whether the title of the liquidating levee board was good or bad, the actual occupancy of the defendants, Williams and Lightfoot, of the parts of the land owned by them, renders their title unassailable as purchasers under the decree in *Green* v. *Gibbs*, and from the state under the act of March 2, 1888 (Laws, p. 40).

*Mayes & Harris*, on the same side.

*Moore & Jones* and *R. O. Johnston*, for the appellee.

1. The title acquired by Scott from the state was not invalid by reason of any fiduciary relation he bore to the owner, or any obligation to pay the taxes. *Oswald* v. *Wolf*, 126 Ills., 542. Nor was it void because he paid no taxes for any year prior to 1881. The land had been sold to the ten cent levee board in 1867, and that title became vested in the state by virtue of the act of April 11, 1876 (Laws, p. 166), and whatever title the state had, passed to Scott on his purchase in 1883. *Caruthers* v. *McLaran*, 56 Miss., 371; *Gamble* v. *Witty*, 55 *Ib.*, 27. The state's deed to Scott conveyed a good title, although he paid the taxes of no year prior to 1881. He bought under a sale made in 1882 for the taxes of 1881, and, under § 561, code 1880, was not required to pay more than he did

pay. The decisions relative to sales under the act of 1884, have no application to this case, for the two statutes are essentially different in their terms.

2. The evidence shows that Buford was in actual occupancy of a part of the land, claiming the whole under his deed from Scott and Montgomery, of December 19, 1887, up to April 1, 1891, when this suit was brought, and, even if his title was invalid at its inception, it would now be perfect by virtue of § 539, code 1880. *Pearce* v. *Perkins*, 70 Miss., 276; *Patterson* v. *Durfey*, 68 *Ib.*, 779; *Jonas* v. *Flanniken*, 69 *Ib.*, 577; *Carlisle* v. *Yoder*, *Ib.*, 384. And, although only actually occupying a part of the tract, his possession must be taken as coextensive with the calls of his deed. *Wilson* v. *Williams' Heirs*, 52 Miss., 487; *Hanna* v. *Renfro*, 32 *Ib.*, 125.

3. He also invokes the ten-year statute of limitations, to show that the pretended title in the liquidating levee board was barred and extinguished prior to the passage of the act of March, —, 1888, under which the defendants claim to have derived title. Tiedeman on Real Prop., §§ 716, 717; *Jones* v. *Merrill*, 69 Miss., 747. It cannot be denied that the statute of limitations ran against the liquidating levee board prior to 1890. *Adams* v. *Railroad Co.*, 71 Miss., 752. It ran against the state from 1857 to 1877. Code 1857, p. 402, art. 25; Code 1871, § 2169; *Whitney* v. *State*, 52 Miss., 732. And it ran against counties, cities and towns even when it did not run against the state. *Clements* v. *Anderson*, 46 Miss., 581; *Brown* v. *Supervisors*, 54 Miss., 233; *Money* v. *Miller*, 13 Smed. & M., 531. It was not necessary for Buford to have actually occupied the land all the time for the statute of limitations to operate. *Begnette* v. *Canefield*, 60 Am. Dec., 615; *Ford* v. *Wilson*, 35 Miss., 490; *Harper* v. *Tarpley*, 35 *Ib.*, 506.

4. It is inconsistent with the scope and design of the statute creating the ten cent levee board that its title to land, held under a sale for the ten cent tax, should be divested while so held by a sale to the liquidating levee board for the five cent

tax. Acts 1865, p. 51. This view is confirmed by reference to the statute creating the latter board. Acts 1867, p. 237. The title of ten cent levee board passed to the state under the act of April 11, 1876 (*Shotwell* v. *Railway Co.*, 69 Miss., 541), and the state's deed to Scott inured to the benefit of complainant, as the defendants claim, under an independent and hostile title, and, immediately upon Scott's purchase with the means of the creditors of the Tobin estate, a trust resulted to them, and the complainant under the deed of Scott and Montgomery, trustees, has all the right of those creditors. The purchase of Scott did not operate as a redemption, and there is nothing in the circumstances that can deprive the complainant of the full benefit of § 539, code 1880. There is nothing in the record to show title in the liquidating levee board, except the deed from the commissioners in *Green* v. *Gibbs* (*Bank* v. *Railway Co.*, 72 Miss., 447), and that was indispensable to an acquisition of the state's title under the act of 1888. *Jones* v. *Merrill*, 69 Miss., 747.

Argued orally by *E. Mayes*, for the appellant.

WHITFIELD, J., delivered the opinion of the court.

The sale on the fifteenth of April, 1867, vested the title in the ten cent levee board, and the alleged sales thereafter to the liquidating levee commissioners, and to the state in 1872, were void (*Shotwell* v. *Railroad Co.*, 69 Miss., 541), and, under the provisions of the act of April 11, 1876 (Laws of 1876, p. 166), this title was vested in the state (*Shotwell* v. *Railroad Co.*, *supra*). Whatever title the state had was vested in Charles Scott by the auditor's deed of March 12, 1883. Code of 1880, § 561; *Caruthers* v. *McLaran*, 56 Miss., 371; *Gamble* v. *Witty*, 55 Miss., 27; *Paxton* v. *Land Co.*, 68 Miss., 739.

It is very earnestly insisted that the auditor's deed of March, 1883, to Scott, is void, because the auditor, it is said, in executing this deed, under § 561 of the code of 1880, was acting

in the execution of a statutory power, just as he was held to
have been in *McCulloch* v. *Stone*, 64 Miss., 378, and *Murdock*
v. *Chaffe*, 67 Miss., 740, in executing deeds under the act of
1884 (Laws of 1884, p. 182), and that, as the auditor did not
require the payment of all taxes "from 1874 up to 1882, in-
clusive," but only the taxes of "the years of 1881 and 1882,"
he did not comply with the terms of the statute—his sole power
to sell—which, as it is contended, required him to collect not
only all the taxes, etc., due under the particular sale of March,
1882, but all taxes due from 1874 to 1882, inclusive.    This
construction is unsound.    It fails to take into account the broad
distinction between the two schemes—the one provided by
§ 561, code of 1880, and the other by the act of March, 1884.
The former (§ 561, code of 1880) is part of the general scheme
of the law in reference to redemption or purchase of lands sold
to the state for taxes, and has reference, as applied in the in-
stance before us, to the terms provided by the general law as
to the purchase of lands forfeited to the state for taxes—any
lands so forfeited anywhere in the state.    What are those terms?
The intending purchaser of any lands so sold, under this gen-
eral law, to the state for taxes, is required, by § 561 of the
code of 1880, "to pay to the auditor of public accounts the
amount of all taxes for which such land was sold, and all the
costs incident to such sale [in the singular], and of all taxes
and costs accrued thereon since such sale, and twenty-five
per centum of all taxes for which such land was sold added
thereto," etc.

"Such sale," in this section, means any one particular sale
of land for taxes to the state, in pursuance of the general pro-
visions of the law in chapter 10 of the code of 1880, and "all
taxes and costs accured thereon since such sale," means all
taxes and costs accrued on the land thus sold since the one par-
ticular sale under which the purchaser is buying.    In contem-
plation of law, the state will never have, ought never to have,
title to lands sold to it for taxes, save under one sale.    Once

validly sold to the state for taxes, until redeemed or purchased, it remains state land, and cannot again be the subject of sale to the state for taxes, if the law be observed, and it is contemplated that the law will be observed, and § 561 was passed in view of this expected compliance with the law regulating sale of land for taxes, and itself contemplated that the title to land sold to the state for taxes under the general law would be so vested in the state in pursuance of one proper sale, and one only, and hence its provisions as to payment of taxes, costs, etc., by the intending purchaser, relate to the taxes and costs incurred under and since some one such particular sale. If it be said that, in fact there were instances in which the same land appeared to have been sold to the state for taxes several times, though there had been no redemption and no purchase since a first valid sale to the state, the answer is that no such chaotic condition of title by the state to lands sold to it for taxes can be attributed to the law. The law is clear, however careless or ignorant those who conducted tax sales may have been. The law is "not the author of confusion." On the other hand, the act of 1884, page 182, is an act not general, but special; "an act for the benefit of purchasers of levee lands sold" under the Gibbs-Green decree, and the auditor, in executing conveyances under that act, was required, as a condition precedent to his power to convey, to collect "all state, county and levee taxes due thereon up to the date" of said deed.

The state imposed, as the condition of parting with its title to the lands of the particular class referred to in the act of 1884, the payment of all state, county and levee taxes to the date of the quitclaim by the auditor. The two schemes are thus seen to be essentially different, and this contention must fail. The deed from Scott and Montgomery, of date December 19, 1887, to appellee, vested that title in him. This would be so if it were conceded that the sale to the state, in March, 1882, was void, for the state had title independently of that sale. But it is also true that appellee was in actual occupation of part of

the land, claiming the whole, under the deed of December 19, 1887, from that time to April 1, 1891, when this bill was filed, from which it follows, under *Patterson* v. *Durfey*, 68 Miss., 779; *Carlisle* v. *Yoder*, 69 Miss., 384, and other decisions of this court, that the title under the tax sale to the state in March, 1882, is unassailable.

The paper title of appellants, therefore, fails, and, Abraham Williams being shown not to have had any actual occupation of any part of the land, the decree is correct as to the land claimed by him—southwest one-quarter of southwest one-quarter of section 25, township 24, range 7, west, in Bolivar county, Miss.—and, as to that, is affirmed. William Lightfoot is shown to have had actual occupation of a small part of the land claimed by him—the northwest one-quarter of southwest one-quarter of the section aforesaid. But it is also conclusively shown that appellee was in the actual possession of part of this tract, claiming the whole, under his said deed from Scott and Montgomery. We have, then, the appellee in actual possession of a part of this tract, under a perfect paper title, claiming the whole, according to the calls of his deed, and the appellant, Lightfoot, without any valid paper title, in actual possession of a small part of the same tract, claiming under the auditor's deed of May 23, 1888, made in pursuance of the act of 1888 (Laws of 1888, p. 40). Lightfoot's contention is that, having, for twelve months after the passage of said act, been in the actual occupation of a part of said tract, claiming the whole, § 4 of that act vests him, by its own force and effect, with perfect title to the whole, notwithstanding the fact that appellee has a perfect paper title and has actual possession of a part of the same tract, claiming the whole. It will be noted that this is not the case of the holder of the perfect paper title not being in possession, nor of his not knowing actually that the tax title holder under this act of 1888 was in actual possession of a part of the same tract, claiming the whole, for the proof shows actual knowledge on Buford's part of Lightfoot's

possession, of its adverse character, and of his claim to be owner of the whole. Lightfoot's possession, therefore, so far as the quality and character of that possession is concerned, falls strictly within the legal definition of adverse possession. *Alexander* v. *Polk*, 39 Miss., 755; *Woods* v. *Transportation Co.* (Ala.), 3 So. Rep., 475; 1 Am. & Eng. Enc. L., 264.

"A party who relies upon adverse possession," says this court in *Alexander* v. *Polk*, *supra*, must show the actual knowledge of the real owner that he claims in opposition to or defiance of his title, or he must show such an occupancy and user, so open and notorious and inconsistent with, as well as injurious to, the rights of the true owner, that the law will authorize, from such facts, the presumption of such knowledge by the true owner. It is not the mere occupancy or possession which must be known to the true owner to prejudice his rights, but its adverse character. The proof clothes Lightfoot's possession with the character of adverse possession under color of title, within this definition.

Recurring, then, to the contention of Lightfoot, set out above, we find it necessary to construe § 4 of the act of 1888. That section is in these words: "Twelve months' occupation, at any time after the passage of this act, of any tract of land, under any such conveyance from said commissioners of the Hinds county chancery court, or under said auditor's deeds, or any part thereof, by any such occupant claiming the whole, shall forever bar any action at law or in equity for such tract."

What is the true construction of this § 4 of this act? Does it mean that one claiming under the deed of said commissioners or of the auditor, who has had twelve months' occupation since the act of 1888, of any part, however small, of any tract of land, however large, embraced in such deed (the property, prior to tax sale, of different owners), acquires, thereby, perfect title by the force of this remarkably short and peremptory statute of limitations? If so, then we are all agreed that said section would operate, so construed, mere legislative confisca-

tion of estates, and it would be clearly unconstitutional and void. In Tyler on Ejectment and Adverse Possession, pp. 900, 901, it is said: "As a general rule, when a large tract of land is divided into lots, the possession of one lot adversely will not create an adverse possession of the other parts of the tract. This doctrine has been repeatedly recognized by the courts. . . . The doctrine of adverse possession, applied to a farm or single lot of land, is, in itself, reasonable and just. In the first place, the quantity of land is small. Possessions thus taken under a claim of title are generally for the purposes of cultivation and permanent improvement. It is generally necessary to reserve a part for wood land. Good husbandry forbids the actual improvement of the whole. The possessions are usually in the neighborhood of others. The boundaries are marked and defined. Frequent acts of ownership in the parts not cultivated give notoriety to the possession. Under such circumstances, there is but little danger that a possession of twenty years [with us, under the general statute, ten years] will be matured against the right owner. If it occasionally happens, it will arise from a want of vigilance and care in him who has the title. It is believed that no well-founded complaint can be urged against the operation of this principle, but the attempt to apply the same principle where a large tract is conveyed would be mischievous indeed, and the doctrine is never sanctioned by the courts"—citing authorities. And again, at page 902, he quotes the supreme court of Vermont in *Chandler* v. *Spear*, 22 Vt., 388, as holding that the "doctrine of constructive possession will not extend to the case of a few acres taken possession of for the purpose of gaining title to a whole township.

But it is our duty to give this § 4 such a construction, if we reasonably can, as will uphold and not overthrow it. And a majority of the court think it should be held to mean that, where one claiming under such deeds has had, for twelve months since the act of 1888, occupation of a part of a single

tract of land, to be used as a single tract, claiming the whole of such single tract under the calls of such deed, such person acquires title, under said § 4, to the whole of such tract, when the person holding the true paper title is not also, at the same time, in possession of part of such tract.

But our case, as has been shown, is one where the holder of the perfect paper title is now, and was during said twelve months, himself in possession of a part of this very same tract, claiming the whole under the calls of his deed, and the claimant under the deed of the auditor, under the act of 1888, was also in adverse possession of a small part (another and a different part) of the same tract, claiming the whole under the calls of his deed. What is the law applicable in such case of conflicting claims to adverse constructive possession? Says Mr. Tyler, page 900 of his work, *supra*: "Two persons representing separate interests can never be in adverse constructive possession of the same land at the same time; so that, from the very nature of the case, the owner of the premises being, in contemplation of law, in the constructive possession of his land, when not in the actual possession thereof, cannot be disseized except by an entry and occupancy by another, and only to the extent of such occupancy," citing a great array of authorities.

Says the supreme court of Pennsylvania in *Miller* v. *Shaw*, 7 Serg. & R. Rep., 143: "It is a contradiction in terms that a man by wrong should have any right, and that this right by wrong, should be extended by construction. There cannot be two conflicting constructive possessions, one in the owner and the other in the trespasser. The right always draws to it the possession, and it there remains until seized by the wrongdoer, whose possession is strictly *possessionem pedis;* who must necessarily be confined to what he has grasped—his real and actual occupation. Beyond that no length of time will protect him, because beyond that the owner's possession has never been changed. It always is, in contemplation of law, continued in

him.    These are the dictates of common sense, of common jus-
tice and of the common law.''

Says the supreme court of the United States, in *Hunnicutt* v.
*Peyton,* 102 U. S., pp. 368, 369: ''It is true that, when a
person enters upon unoccupied land under a deed or title, and
holds adversely, his possession is construed to be co-extensive
with his deed or title, and the true owner will be deemed to be
disseized to the extent of the boundaries described in that title.
Still, his possession beyond the limits of his actual occupancy
is only constructive.    If the true owner be, at the same time,
in actual possession of part of the land, claiming title to the
whole, he has the constructive possession of all the land not in
the actual possession of the intruder, and this, though the
owner's actual possession is not within the limits of the defect-
ive title.    The reason is plain.    Both parties cannot be seized
at the same time of the same land under different titles.    The
law, therefore, adjudges the seizin of all that is not in the ac-
tual occupancy of the adverse party to him who has the better
title.    These distinctions are clearly shown in the cases.''

These authorities clearly put the principle governing this
class of cases, and, applying that principle to the case in hand,
it follows that Lightfoot is only entitled to so much of the land
claimed by him as he shall be able to clearly show by testimony
was in his actual occupancy.    He will be limited strictly to his
actual possession—*possessionem pedis.*    To that extent he is
entitled to relief.

The decree is affirmed as to Abraham Williams, and, as to
William Lightfoot's claim, is reversed only so far as to enable
him to show the extent of his actual occupancy.    Costs to be
divided.

*Decree accordingly.*