## WILLIAM HANNA *v.* MARK RENFRO et al.

1. DEED: LATENT AMBIGUITY.—A tax collector's deed which designates the land sold by the proper section, township and range, but omits to designate the county or State in which it is situated, is not void for uncertainty; such omission creates a latent ambiguity which may be explained by parol evidence showing the identity of the land.

2. PRACTICE: EVIDENCE: DEED.—It is no objection to the introduction in evidence of a deed, that there is a latent ambiguity in it, which is capable of explanation by other evidence; but if it be introduced and be not explained and rendered certain by other evidence, it should then upon motion be excluded from the consideration of the jury.

3. CHAMPERTY: CONSTRUCTIVE POSSESSION OF WILD LAND NOT WITHIN THE RULE AGAINST.—The possession of wild and uncultivated forest lands is, for some purposes, regarded as in the true legal owner, without any actual visible occupancy by him; but such constructive possession being no notice of an adverse claim to a purchaser, and no impediment to the delivery of actual possession to

him, is not, therefore, within the reason of the rule against selling pretended titles. See 4 Kent, Com. 446.

4. CHAMPERTY: JUDICIAL AND OFFICIAL SALES NOT AFFECTED BY.—It seems, that the policy prohibiting the sale of lands in the adverse possession of another, is not applicable to judicial and official sales. See 1 Dana, 216 ; 2 Ib. 323 ; 3 Watts & Serg. 114.

5. EJECTMENT: COLOR OF TITLE : ADVERSE POSSESSION.—A deed constitutes color of title, and if it be followed by possession, and assertion of title, the possession will be adverse, however defective the deed may be, and however unfounded the title. See 8 Pet. 41 ; 8 Cow. 589 ; 2 Murph. (N. C.) 14 ; 1 Meigs, 207.

6. EJECTMENT: ADVERSE POSSESSION.—Where a party enters under color of title, his adverse possession is not confined to that part of the premises in his actual occupancy, but extends to all the land embraced in the deed under which he claims.

7. EJECTMENT : WHEN DESCENT CAST UPON THE HEIR: EFFECT OF.—If the ancestor die in the adverse possession of land, the descent is cast upon his heirs who remain in possession after his death, and it is *prima facie* sufficient to enable them to recover the premises in ejectment.

8. STATUTE OF LIMITATIONS: EJECTMENT: MORTGAGE.—The assignee of a mortgage barred by the Statute of Limitations at the time of the assignment, if he afterwards get possession of the land, cannot set it up to defeat an action of ejectment brought by a person who was in the adverse possession of the land when the assignment was made.

9. NEW TRIAL: ERRONEOUS INSTRUCTIONS.—A new trial will not be granted where the verdict is clearly sustained by the evidence, because the court erred in charging the jury upon points not material to the issue.

IN error from the Circuit Court of Copiah county. Hon. John E. M'Nair, judge.

*F. Anderson* and *George S. Yerger*, for plaintiff in error, made the following points, and cited the following authorities :—

1. The tax sale was void, because the land was not designated by the particular eighths by the tax collector in selling. *Hodge* v. *Wilson*, 12 S. & M. 504.

2. It was void also for the reason that it was sold by the fraud and collusion of the tax collector and Patton. *Doughty* v. *Hope*, 1 Coms. R. 79 ; 2 Denio, R. 5, 98 ; *Blossom* v. *Cannon*, 14 Mass. R. 177 ; *Granger* v. *Parsons*, 2 Pick. 192 ; *Thayer* v. *Stearns*, 1 Ib. 482 ; 3 Watts, R. 427 ; 1 Watts & Serg. 310 ; 7 Cow. R. 88 ; 4 Wheat. 77 ; 4 Cranch, 403.

3. A deed which is void cannot be the foundation of an adverse

possession, and hence Renfro's adverse possession can only be co-extensive with his actual enclosure and occupation. 15 Wend. 597; 2 Johns. R. 230; 3 Ib. 388.

4. O'Keefe being the true owner, the possession was in him, at the time of the sale by Patton to Renfro. The sale was void and conveyed no title. 4 Wheat. 222; 8 Cranch, 247.

*D. Mayes* and *E. G. Peyton,* for defendants in error,

Cited 10 Johns. R. 339; 4 Dana, R. 460; 4 Johns. 210; 9 Wend. R. 223; 15 Ib. 171; 1 Tennessee, R. 516; 4 Kent, R. 448; 4 How. 24; 11 S. & M. 430; 2 Dana, R. 69; 2 Caines, R. 184; 2 Johns. Cases, 59, 423; Meigs, R. 187; 11 Johns. R. 567; 1 Greenl. R. 238.

HANDY, J., delivered the opinion of the court.

This action was brought by the defendants in error, to recover possession of a tract of land in Copiah county, claimed by the plaintiff in error.

Upon the trial below, the plaintiffs showed title as follows:— It appeared that the land was purchased from the United States by one O'Keefe, prior to the year 1836, and the plaintiffs showed a deed made by the tax collector of Copiah county, dated 4th of March, 1844, to William Y. Patton, by which it appeared that the land was sold on that day for the taxes of O'Keefe, due and unpaid for the year 1843; also a deed from Patton to Mark Renfro, the father of the plaintiff, dated 4th of February, 1847, conveying the land for the consideration of $200; which deeds were duly recorded; also a mortgage executed on the 16th of April, 1836, by O'Keefe to Horace Anderson, to secure a promissory note of that date for $916.55, due 1st of January, 1837, and a written transfer of the mortgage by Anderson to the defendant, dated 13th of January, 1853. It was further shown that Mark Renfro, in October, 1849, employed a person to take possession of the land, which was then wild and without improvements, and that possession was accordingly taken and a part of the land cleared, and a house built upon it by that person, who remained in possession in the years 1850 and 1851, as the tenant of Renfro; that one

of the plaintiffs, a son of Mark Renfro, who died in 1851, was in possession in 1852 and 1853, and on one occasion in February of the latter year, when some of the neighbors attended at his request to do some work upon the land, the defendant appeared and forcibly prevented them from proceeding, and during that year the defendant took possession of the land, the houses being occupied by one of the plaintiffs or his family; that in the year 1852, the defendant offered to purchase the claim of the plaintiffs, and stated that he would have to purchase an outstanding mortgage in order to make the title good, if he bought the plaintiffs' title which he said was not good. The possession of the lands by the defendants, at the time the suit was instituted, was admitted.

The defendant then showed that the land had not been duly assessed, and read the depositions of the tax-collector at the time when the sale for taxes was made, to show that the sale was made illegally and by fraud and collusion between the tax-collector and Patton; he also showed the mortgage and assignment above-mentioned, and the entry of the land by O'Keefe at the United States Land Office.

The first question presented, arises upon the objection made by the defendant below to the introduction of the tax-collector's deed to Patton, on the ground of uncertainty in the description of the land contained in it, which designated the proper sections, townships and ranges, but not the county or State, in which the land lay.

This was no ground of objection to the introduction of the deed as evidence. It was but a latent ambiguity which was susceptible of explanation; and if not explained and rendered certain by other evidence, it would have been proper to move to exclude the deed for want of certainty and of identity of the land referred to in it, with the premises sued for. But no such step was taken, and the evidence fully shows the identity of the premises with those sued for.

The next position insisted upon is, that the evidence shows that the action was not maintainable : that the deed of the tax-collector to Patton being invalid or void, the title of O'Keefe was unaffected by it, and his right of possession remained as if the sale had not

been made; and the lands being wild, that his right of possession placed him in the position in law of actual occupation, so that when Mark Renfro purchased and took his deed from Patton, he purchased the premises in the actual adverse possession of O'Keefe, which was champertous and void; and, therefore, that the plaintiffs' claim must fail.

Let us examine these positions by the evidence and the rules of law applicable to the facts of the case.

It appears that Mark Renfro purchased for a valuable consideration from Patton, and obtained a conveyance in February, 1847, more than seven years before the commencement of this suit, and at that time, that no one was in the actual, visible possession of the premises, nor exercising control over them, so as to give notice to the public of an adverse claim. Mark Renfro took possession under his deed, and died in possession, and the descent was cast upon the plaintiffs, his heirs, who remained in possession after his death, claiming title. This, it is admitted, is *prima facie* sufficient to entitle the plaintiffs to recover. But it is said, that this possession was wrongful, because the deed on which it was founded, is illegal and void, and that an adverse possession cannot be predicated upon it.

This view is untenable under the circumstances of this case. It is not alleged that the deed from Patton to Renfro was void, because the tax-collector's deed was not valid and effectual to convey the land to Patton. If the tax-collector's sale was not made in conformity to law, that would not render the deed from Patton to Renfro insufficient to justify the possession of Renfro under it, so as to enable him to occupy the position of adverse possession. The deed clearly constitutes color of title, and if it be followed by possession and assertion of title, the possession will be adverse, however defective the deed may be, and however unfounded may be the title. *Ewing* v. *Burnett*, 8 Peters, 41; *La Frombois* v. *Jackson*, 8 Cowen, 589; *Hill* v. *Wilson*, 2 Murphy, (N. C.) 14; *Whitesides* v. *Singleton*, 1 Meigs, 207; Angell on Limit. § 404, and cases there cited (third edition.) And it is well settled that where a party enters under color of title, he is not considered as a mere disseisor, and confined to the part of the premises in his ac-

tual occupancy, but his claim extends to all the lands embraced in the deed, under which he claims.    Angell on Limit. § 400, and cases cited.

The authorities referred to would sustain the position that the tax-collector's deed would be sufficient color of title to render the possession of Renfro adverse, even if his claim of adverse possession depended upon that deed or was implicated in it.

But it is insisted that Renfro acquired no title, because the tax sale being void, O'Keefe must be considered as in adverse possession of the land when that · sale was made, and when Renfro purchased, and hence that his title is void for champerty.

It is true, that the legal title draws with it the right of possession, and that for some purposes there may be a sufficient legal possession of wild, forest lands without an actual, visible occupancy by the proprietor.    Yet this possession is merely constructive, and may be defeated and destroyed by an actual, visible occupation by a wrong-doer, continued for such a length of time as to bar a recovery of possession by the proprietor.    Angell, § 395.    And it is clear that an occupation by a party under color of title and claiming adversely, cannot have less validity than the entry of a wrong-doer.    But this constructive possession is not within the reason of the rule against selling pretended titles, which applies to lands in the actual adverse possession of another.    4 Kent's ·Com. 446.    As possession was an essential part of title and dominion over property sold, and that could not be delivered to the purchaser when the lands were in the actual possession of an adverse claimant, the policy of the law rendered such sales void, as tending to .promote strife and litigation.    But this reason can have no application to unoccupied lands, when there is nothing to give actual notice to a purchaser that there is an adverse claim, and no impediment to the delivery of actual possession.

In addition to this, the policy prohibiting the sale of lands in the adverse possession of another, has been held not to be applicable to judicial and official sales.    *Frizzle* v. *Veach,* 1 Dana, 216; *Violett* v. *Violett,* 2 Ib. 323; *Jarrett* v. *Tomlinson,* 3 Watts & Serg. 114.

The only other point necessary to be considered is, whether the

defendant acquired any title, or could justify his possession as against the plaintiffs under the mortgage of O'Keefe.

It appears that the condition of the mortgage was broken in January, 1837, and there was no evidence whatever tending to show that the bar of all right or remedy arising from it, was not complete and in full operation at the time when the defendant obtained an assignment of it. The mortgage and all remedies under it were barred in 1851 upon its face, and there is no act or acknowledgment either of the mortgagor or mortgagee before that time to remove the bar. It is, therefore, manifest that the defendant acquired no title by virtue of his assignment of the mortgage, which was after the bar had attached; and that the plaintiffs, being in adverse possession under color of title, had the right to rely upon the fact that the mortgage was barred upon its face; and unless it was shown by the defendant by competent evidence not to be barred, that he could claim no right under it.

The instructions given to the jury upon the trial are very numerous and general in their character, and in some respects are not entirely accurate. So far as they are applicable to the material points involved under the facts of this case, they appear to be correct; and we are satisfied that the verdict is well sustained by the law arising upon the evidence, and that the errors in the instructions are, therefore, immaterial.

Let the judgment be affirmed.