SHEPHERD *v.* Cox *et al.*

(In Banc. April 14, 1941. Suggestion of Error Overruled Oct. 13, 1941.)

[1 So. (2d) 495. No. 34459.]

**Patterson & Patterson**, of Calhoun City, and **Creekmore & Creekmore**, of Jackson, for appellant.

W. J. Evans and David Sanderson, both of Calhoun City, and B. C. Adams, of New Orleans, La., for appellees.

E. F. Steiner, T. H. Hedgpeth, and Beverly C. Adams, all of New Orleans, and David Sanderson, of Calhoun City, for appellees, The Federal Land Bank of New Orleans and David Sanderson, Trustee, on suggestion of error.

**W. J. Evans**, of Calhoun City, for appellee, C. W. Cox, on suggestion of error.

Patterson & Patterson, of Calhoun City, and Creekmore & Creekmore, of Jackson, for appellant, on Suggestion of Error.

See Graham v. Warren, 81 Miss. 330.

**E. F. Steiner, T. H. Hedgpeth** and **Beverly C. Adams,** all of New Orleans, and **David Sanderson,** of Calhoun City, for appellees, the Federal Land Bank of New Orleans and David Sanderson, Trustee, in reply.

**Alexander, J.,** delivered the opinion of the court.

Suit at law was begun in ejectment by appellant, who, after transfer thereof to the chancery court, filed his bill against C. W. Cox, Eugene Robertson, David Sanderson, trustee, and the Federal Land Bank of New Orleans. Complainant sought possession of twenty acres in the S½ of fractional Section 4, T. 13, Range 2 W., in Calhoun County, Mississippi, the cancellation of certain instruments under which defendants asserted title, and for damages and mesne profits.

A deraignment of the title thereto shows a common source, complainant asserting title under deed of a Commissioner of the chancery court dated November 21, 1890, and the defendant, Cox, under a tax deed dated March 3, 1890. The defendant Robertson was eliminated from the case under his special demurrer. Cox claims ownership under a deed from the Federal Land Bank in 1936. The Land Bank had acquired same through trustee's deed after foreclosure of deed of trust in its favor given by the said Robertson. It seems to be conceded that the paper title to said property is in the defendant, Cox. Complainant rests his claim upon adverse possession.

Fractional section 4 contains about 156.36 acres, and is L-shaped and lies to the north and east of Section 1, T. 24, R. 8 E. The N.½ of Section 4, approximating eighty acres, is known as the Cooner lands and is not involved in the controversy. Nor is any other part of said section except the E.½ of the remainder of the north portion of Section 4 lying north of said Section 1 and south of the Cooner land.

As in all suits of this character, the evidence is extensive, conflicting, and confusing. It appears clear, however, that complainant has exercised such dominion over part of the land in suit as would establish title there-

to by adverse possession, and we so hold. It remains to adjust such fact to the legal principles involved. Complainant's adverse possession of part of said land under the color of title furnished by the commissioner's deed in 1890 would give him title to the extent of the calls of said deed (Hanna v. Renfro, 32 Miss. 125; Wilson v. Williams' Heirs, 52 Miss. 487; Native Lumber Co. v. Elmer, 117 Miss. 720, 78 So. 703; Evans v. Shows, 180 Miss. 518, 177 So. 786) unless there are conflicting superior claims by Cox, who holds a superior paper title. Such claims, however, would have to depend upon such assertions of ownership as amounted to an adverse possession by defendant of a part of such lands. The constructive possession of the whole by adverse possession of a part would be superior in him who held the superior title. Railway Co. v. Buford, 73 Miss. 494, 19 So. 584; 2 C. J. S., Adverse Possession, sec. 193, page 798.

The complainant claims under the adverse possession by himself, while the defendant Cox, who bought the land in 1936, bases his claim of adverse possession upon the acts of his predecessors in title. Such acts related almost exclusively to the payment of taxes and to certain transactions by sale and mortgage, common repute, and other evidence circumstantial in its nature. In view of the long, continuous occupancy by complainant under color of title to the entire S.½ of fractional Section 4, his claim now to only twenty acres appears conservative. There is some evidence, admittedly vague, by which defendant sought to establish a sufficient occupancy of that part of Section 4 lying east of Section 1 and referred to as the south "leg." But such evidence either proves nothing or develops the fact of a prior agreement between complainant and one Hervey, a predecessor in title, which would excise this "leg" from the case and forbid any adverse occupancy thereof from expanding title constructively to the whole south half of Section 4. The learned Chancellor, in denying relief to complainant, was no doubt influenced by the inability of complainant definite-

ly to identify the land so occupied as being in Section 4. This was not a prerequisite to validity of his claim. It is the fact of such possession, and not the knowledge of its legal description, that gives title. If there were uncertainty in complainant's mind whether the land occupied was in Section 4 or in the N.E.½ of Section 1, this would be immaterial since he was occupying the land under color of a deed which embraced both. The evidence, however, shows such occupancy to have been in whole, or at least in greater part, in Section 4. 2 C. J. S., Adverse Possession, Sections 217, 218, page 825.

Since adverse possession for the statutory period is of itself at least constructive notice of title, and since such title may not be divested by individual action except by transfer from such holder or loss by subsequent and superseding adverse occupancy, the proceedings by which defendant's predecessor in title, Robertson, sought to reestablish his record title under Chapter 242, Laws of 1924, Sec. 2346, Code 1930, all existing records having been destroyed by fire, did not affect complainant's outstanding title by adverse possession, especially since he was not made a party to such proceedings.

We hold that the evidence justifies the finding that complainant established title by adverse possession to at least a part of the land in suit, which possession was extended to the entire twenty acres involved through the color of title furnished by his deed.

The decree of the court below is reversed, and title to the land in suit is hereby decreed in the appellant and the cause remanded for the adjudication of such other relief as appellant may be found entitled, in conformity with the prayer of his bill and with the views herein expressed.

Reversed and remanded.

## On Suggestion of Error.

**Anderson, J.,** delivered the opinion of the court on suggestion of error.

The vital point in this case is whether appellant's deed from the commissioner dated November 21, 1890, is available to him as color of title as against the tax deed to Hervey dated March 3, 1890. We are of the opinion that that question should be answered in the affirmative.

When considering color of title the question is not whether the instrument relied on as color operates to convey, and to continue to convey, any actual title but whether it appears to do so; and when on the face of the instrument it purports to convey title to the land therein described, it will constitute color although, because of matters de hors the instrument, it conveys no title at all. And the rule is too well settled in this state to be challenged now, that the actual adverse possession, by the colorable grantee, for the statutory period of a part of the tract of land, within the descriptions of the instrument which constitutes the color, extends the adverse possession and the title acquired thereby to the entire tract within the calls of the color, there being no conflicting actual possession.

But refuge is sought to be taken by appellees within the rule that one cannot successfully claim adverse possession under color of title where he has deprived himself of the color relied upon by conveyance to another or has been deprived of the color of title relied on by judgment or decree or by a sale under execution or under a power of sale given in a mortgage executed by claimant. 2 C. J. S., Adverse Possession, section 69, pp. 585, 586. And appellees say that a tax sale should be considered as within that rule.

We may concede the force of that rule when the party relying on adverse possession has by his voluntary act conveyed the premises to another; for by this he has disclaimed the property and cannot then be in the attitude of claiming on the one hand and disclaiming on the other.

And we may further concede that the rule will apply to any sale under a judgment or decree in a proceeding to which the adverse claimant has been a party; and we might go even further and concede that the rule would apply to a tax sale where the adverse claimant owned the land or some interest therein, at the time of the levy of the taxes for which the land was sold or was otherwise under a personal duty or obligation to the state to pay the taxes when the sale was made.

But none of these situations was present in this case. The Shepherds did not own any interest whatever in the land when the taxes for which it was sold became a lien thereon, and they had no interest in it when the land was sold for the taxes. They were under no obligation whatever in respect to the taxes. Everything done about the assessment, and the sale thereunder, was as to the Shepherd res inter alios acta. And while the maturity of the tax sale operated to wholly divest the Shepherds of any actual paper title, it had no effect upon their deed as color of title. They had no part in the tax deed. It was as to them wholly in invitum. They did not thereby disclaim, it was something as to which they had had no voice, and had said nothing; and they were not personally obliged to say or do anything about it. They were in no sort of privity with the tax purchaser; and to say that their commissioner's deed did not operate as color of title in adverse possession would be to say that there can be no such thing as color of title in adverse possession against a tax deed, whoever it is that asserts such adverse possession, and we must hold that such is not the law. We think Graham v. Warren, 81 Miss. 330, 331, 33 So. 71, relied on by both sides in the present case, supports the conclusion at which we have arrived, but we rest our decision not upon that case but upon principle, which we have briefly outlined.

Suggestion of error overruled.

### Dissenting Opinion.

**Smith, C. J.,** delivered a dissenting opinion.

The ground on which the decree of the court below is reversed is that the appellant had been in actual possession of a small portion (four or five acres) of the land in controversy for more than ten years, claiming the whole of it under a color of title thereto. This claimed color of title is the deed of a commissioner appointed for that purpose by the chancery court in a case before it, to which the then owner of the land was a party, executed on November 21, 1890. Prior thereto, on March 3rd of the same year, the land was sold for taxes to Hervey, through whom the appellees claim by mesne conveyances. The chancery court commissioner's deed vested the appellant not with the color of title but with the title to the land subject to be divested by his failure to redeem the land from the tax sale within one year after that sale was made. This time expired in March, 1891, under the statutes then governing, and the land not having been redeemed from the tax sale, Hervey's tax deed thereto became absolute and ''its operation to divest the title out of (Shepherd) and to invest it in (Hervey) would be as effective as a quitclaim deed from'' Shepherd to Hervey. Acoff v. Roman, 172 Miss. 141, 159 So. 555. In other words, Shepherd's commissioner's deed ceased to be available to him as evidence of either title or color of title to the land. If Shepherd had been claiming the land prior to the sale of taxes under a deed investing him not with the title to the land but only with color thereof, the result would necessarily be the same, for an act which destroys one's right to justify possession of or claim to land under a deed conveying the title thereto to him must necessarily destroy one's lesser right to justify possession of or claim to land under a deed which conveys to him a mere color of title.

Color of title when applied to a written instrument implies that it purports, but fails, to convey title; conse-

quently, an instrument which conveys title cannot be said to be color of title. This is but the statement of a self-evident fact; but if authority be desired therefor, it will be found in 1 Am. Jur. Adverse Possession, section 190; Crowder v. Doe, 162 Ala. 151, 50 So. 233, 136 Am. St. Rep. 16, and City of Barnesville v. Stafford, 161 Ga. 588, 131 S. E. 487, 43 A. L. R. 1045; Hitt v. Carr, 62 Ind. App. 80, 109 N. E. 456. But it is said in effect that since Shepherd was not the owner of the land when it was sold for taxes, he was under no obligation to redeem it from that sale; and when he failed to redeem it therefrom, thereby permitting Hervey's title to become perfect, the effect thereof was simply to transform the deed under which he theretofore held title to the land from a deed conveying title to one merely conveying color of title. In other words, to change the deed from one conveying title to the land described therein to one which purports, but fails, to convey the title thereto—a proposition so novel that it has not heretofore appeared in a decision by any court that has come under my observation. Color of title to land based, as here, on an absolute deed thereto, arises when, but not unless, the deed fails to convey title, 1 Am. Jur., Adverse Possession, sec. 185, and the many authorities there cited, and it arises at the moment the deed is executed, and not thereafter.

Graham v. Warren, 81 Miss. 330, 33 So. 71, relied on by the appellant is no authority for extending by construction his possession of a part of the land here in controversy to the whole of it. Warren was there in possession of the land in controversy under a bond for title thereto at the time of a sale thereof for taxes and continued thereafter in possession of it for more than ten years before an action to dispossess him was begun, and the court held his title to the land by adverse possession to be complete. No question of constructive possession under color of title there arose. Possession of land to be adverse to the owner must be by one "claiming to be

the owner" thereof. The only evidence by which Warren claimed to be the owner of the land was his bond for title thereto, which the court held was sufficient evidence of such a claim by him, and, in the absence of evidence to the contrary, he would be presumed to be holding the land adversely to the purchaser at the tax sale. This holding applies here not to the appellant's claim of constructive possession of more land than that of which he was in the actual possession but only to the vesting of title in him by adverse possession of the land of which he was in actual possession. This fact, however, cannot avail the appellant anything here, because the evidence does not disclose any sort of description of the four or five acres of land of which he was in possession that would enable the court to describe it and cancel the appellees' claim thereto.

The suggestion of error should be sustained, and the decree of the court below affirmed.

I am requested by **McGehee, J.,** to say that he concurs in this dissent.