DOUGLAS *et al v.* SKELLY OIL Co. *et al.*

(In Banc. Dec. 9, 1946.)

[28 So. (2d) 227. No. 36223.]

Howie, Howie & McGowan, Jackson & Young, Joe H. Daniel and Milton H. Mitchell, all of Jackson, and E. C. Barlow, of Brookhaven, for appellant.

Watkins & Eager and Butler & Snow, all of Jackson, Jones & Stratton and Hugh V. Wall, all of Brookhaven, Ray, Spivey & Cain, of Canton, and A. F. Molony, of Tulsa, Okla., for appellees.

**McGehee, J.,** delivered the opinion of the Court.

The respective claims of title to the mineral rights here involved are, on the one hand, based upon a deed of conveyance from one G. B. Smith in favor of the Hartman Mercantile Company, a corporation, to certain lands in Lincoln County, and, on the other hand, upon a foreclosure sale and subsequent possession of the land under a deed of trust previously executed by the said Smith during the year 1919 in favor of the Federal Land Bank.

The deed recites a consideration of one dollar and the assumption of the indebtedness secured by the deed of trust. But it does not appear from the record that the Land Bank was ever advised of the fact that the payment of the indebtedness owing to it by Smith had been assumed by the said mercantile company since the deed of conveyance from Smith was not placed of record until February 1, 1944. Nor has the mercantile

company at any time asserted a claim to the land. It permitted the deed of trust to be foreclosed during the year 1925, and had actual notice that the Land Bank had become the purchaser at the sale and taken actual possession of the land by sending an agent to take charge of it, and also knew that shortly after the foreclosure sale the Bank had sold the land to one Cecil Linton, and that he thereupon entered into possession thereof. And the proof discloses that he cultivated a small part of the open land during the year 1926, built two additional tenant houses thereon, and placed four tenants thereon who made crops during the year 1927. More later as to the continuity for more than ten years of this adverse possession of the Bank and of those claiming through it.

The deed of trust in favor of the Federal Land Bank was foreclosed by the original trustee named therein, whereas the appointment of a substituted trustee then appeared of record, divesting the original trustee of his power and authority to act. However, the trustee's deed, executed to the said Bank as purchaser at the sale, was sufficient to constitute color of title, and when the Bank conveyed the land to Linton he likewise entered into possession under color of title with the result that his cultivation and occupancy of part of the land extended his possession to all that was within the call of his deed. Linton thereupon executed a deed of trust in favor of the Bank to secure the purchase price of the land. He made his annual payments thereon from 1926 to 1931, inclusive. Default having been thereafter made in the payment of the indebtedness, this deed of trust was foreclosed in 1934 with the result that the Federal Land Bank again became the purchased at such foreclosure sale.

During the year 1937, the Bank conveyed a portion of the land to the complainant, H L. Douglas, and the remainder to his co-complainant, Calvin Nordan, reserving unto itself one-half of all the minerals. Shortly thereafter Douglas and Nordan each separately executed oil, gas, and mineral leases covering the one-half min-

eral interest not reserved in the deed from the Bank to them. This one-half interest appears to be now owned by the California Company, and is not involved in this litigation.

On August 18, 1944, Douglas and Norton each separately executed an oil and gas lease to their co-complainant, C. G. Norsworthy, Jr., attempting thereby to lease to him the one-half mineral interest which their grantor, the Federal Land Bank, had reserved unto itself as aforesaid. Prior thereto the said Bank had executed such a lease to this one-half mineral interest to one C. D. Loe, who assigned the same to appellee, Skelly Oil Company on December 27, 1939.

The question here is the ownership of this particular one-half mineral interest and the royalties therein.

It clearly appears that the complainants, Douglas and Nordan, knew that their deed from the Land Bank undertook to convey to them only a one-half mineral interest, and they received annual delay rentals from the California Company, as assignee, under their leases to Brewer, based on such one-half mineral interest.

Prior to the execution of their lease on August 18, 1944 to their co-complainant, Norsworthy, it appears that a field representative of the California Company sought to obtain a quitclaim deed to all the land from the Hartman Mercantile Company in favor of the said Douglas and Nordan, as to their respective parts thereof, and evidently intended that it should inure to the benefit of the California Company and the grantees therein, collectively. But it is shown that the Mercantile Company had ceased to do business during the year 1925, and consequently the deeds were executed presumably by the former stockholders in the corporation, which was not shown to have ever been dissolved. Several of the grantors in these quitclaim deeds are named Hartman, but there is no proof in the record that all of the signers of these deeds were stockholders or that all of the stockholders signed them; and there is no recital in the instru-

ment that any of the grantors were stockholders, or the sole stockholders.

The trial court assumed for the purposes of its decision that these quitclaim deeds conveyed whatever right, title or interest the mercantile company had ever owned in the land, but held that it inured to the collective benefit of not only the California Company and Douglas and Nordan but also to the benefit of the Federal Land Bank and its lessees as tenants in common with them of the minerals.

It is the contention of the appellants that they were not precluded from acquiring the outstanding Hartman title, since the title which had been theretofore acquired by them through the Federal Land Bank was a nullity, and that, therefore, the Bank was not a tenant in common with them. On the other hand, it is contended by the appellees that since Douglas and Nordan were placed in possession under their contractual relations with the Federal Land Bank, they are prevented from setting up an after-acquired title against it or its subsequent lessees of the reserved minerals. We pretermit, as unnecesary to the decision of the case here on appeal, any expression of opinion on these respective contentions last above stated.

The decree of the trial court was also predicated upon the sufficient ground that the Federal Land Bank and its vendees and lessees had been in continuous and adverse possession of the lands for a period of more than ten year prior to the bringing of this suit by the appellants, Douglas, Nordan and Norsworthy, and that the mineral interest reserved by the Federal Land Bank, and now claimed by the appellees under the reservation, leases and as royalties, is protected by the several applicable statutes of limitations, such as Sections 709, 711 and 718, Code 1942. And it would unduly prolong this opinion and serve no good purpose to discuss the testimony as to the character of the possession relied upon by the appellees. It is sufficient to say that on this ques-

tion of fact we are unable to say that the finding of the chancellor was not supported by the evidence. This is especially true in view of the fact that the appellants are in no better position to claim that the possession was not of such character as to amount to continuous adverse possession as against the so-called Hartman title than the said mercantile company itself, or its successors and assigns, if any, would be in to so make such claim. The manager of the Mercantile company testified that he had known of no other claim being asserted to the land since the first foreclosure sale in 1925 than that asserted by the Federal Land Bank and its vendees, and that the mercantile company knew that the Bank, Cecil Linton, and Douglas and Nordan had successively claimed the land and that they had been in possession thereof.

In the case of McCaughn v. Young, 85 Miss. 277, 293, 294, 37 So. 839, 842, the Court said: "The underlying principle on which is founded the rule requiring that possession must be open and notorious before it can be considered adverse to the real owner is that such character of possession is presumptive notice to the true owner of such possession and adverse claim. But the rule does not apply in cases where the party against whom the adverse claim is asserted has actual knowledge of such adverse possession. A possession which is adverse and actually known to the true owner is equivalent to a possession which is open and notorious and adverse." And this is still the law.

The temporary changes in the actual occupancy of the land between the time of the removal of one tenant therefrom and the entry of another, and the failure to make a crop thereon under the circumstances disclosed during the years of 1928 and 1929 of the period intervening since the foreclosure sales in question, while Cecil Linton's farming implements and plough stock remained on the premises, were not in our opinion sufficient to break the continuity of the adverse possession, claim of ownership, and control over the land by him. See 1

Am. Jur., Secs. 168-170, inclusive, at pp. 887, 888, for discussion of temporary interruptions of not unreasonable duration for changes in tenancy, etc. Moreover, there was ten years continuous adverse possession after this interruption.

The two or three months in the Fall of 1934, when the father of Linton had charge of the land, as a tenant at will or at sufferance, pending the execution of a lease to him by the Bank for the year 1935 after the foreclosure of the Cecil Linton deed of trust in September of that year, did not constitute a break in the character of the adverse possession in favor of the Bank.

Moreover, the contention of the appellants to the effect that a sale to the State for taxes during two of the years in question had the effect of interrupting the possession is not well-taken for the reason that each of the said tax sales were redeemed within the time required by law, pending which time the State held only the inchoate title without the right of possession and subject to the right of redemption.

We are of the opinion that the decree of the trial court was therefore correct in sustaining the claim of title of the appellees to their respective mineral and royalty rights in the one-half of the minerals here in controversy, and that the decree should be affirmed on the ground of adverse possession under the authority of the statutes of limitation hereinbefore mentioned.

Affirmed.